(No. 71673.—

THE CITY OF CHICAGO, Appellee, v. THE ILLINOIS DEPARTMENT OF REVENUE, Appellant.

*Opinion filed March 26, 1992.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of Chicago, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Frederick S. Rhine, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The plaintiff, the City of Chicago (City), filed two complaints for administrative review in the circuit court of Cook County, seeking to reverse decisions by the defendant, the Illinois Department of Revenue (Depart-

ment), which denied plaintiff's request for property tax exemptions under section 19.6 of the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 500.6) for four parcels of land. The City holds title to improvements on the land, two buildings and a parking lot. Chicago Dock-Equitable Venture, a private, non-exempt entity, holds title to the underlying land. The two related complaints for administrative review were consolidated before trial.

The circuit court confirmed the Department's decision denying exemptions with respect to the land itself and the parking lot, but set aside the decision as to the denial of exemptions for the two buildings. The Department subsequently appealed the circuit court's decision that the buildings were tax-exempt; the City cross-appealed the court's decision that the land and parking lot were not tax-exempt. The appellate court affirmed the circuit court's decision in its entirety. (210 Ill. App. 3d 273.) We granted the Department's petition for leave to appeal (134 Ill. 2d R. 315), and we now entertain the City's cross-appeal (134 Ill. 2d R. 318(a)). The City's cross-appeal does not take issue with the appellate court's decision that the parking lot is not tax-exempt.

The sole issue on review is whether the value of the two buildings, titled to the City, and the value of the underlying land, titled to a private entity, are exempt from property taxes under section 19.6 of the Revenue Act of 1939 (the Act). For reasons which follow, we affirm.

## FACTUAL BACKGROUND

The facts are undisputed. In 1936, the Chicago Dock and Canal Company, predecessor-in-interest to Chicago Dock-Equitable Venture, leased four parcels of land, comprised of 2.17 acres, located at 500 Peshtigo Court, Chicago, Illinois, to the Kraft Phenix Cheese Corporation (Kraft) for a term of approximately 50 years, ending

April 30, 1986. The lease agreement gave Kraft the option to extend the lease for an additional period of 20 or 30 years. The lease agreement also allowed Kraft to erect buildings on the land, to remove those buildings if it so chose, and to hold title to the buildings until the termination of the lease, at which time all buildings and improvements were to be surrendered to Chicago Dock and Canal Company. The agreement further provided that Kraft was allowed to sublet the premises, but could not assign the lease without the written consent of Chicago Dock and Canal Company. Kraft was also responsible for all taxes and assessments, upkeep costs, and the maintenance of adequate insurance on the entire property. Kraft also paid a monthly rental which accelerated over the years. Kraft soon built two buildings (Kraft buildings) on the property.

At some point in time, Chicago Dock-Equitable Venture, a joint venture of the Chicago Dock and Canal Trust and the Equitable Life Assurance Society of America, became the successor-in-interest to Chicago Dock and Canal Company. For purposes of this review, we shall refer to both entities as Chicago Dock.

On December 30, 1982, Kraft conveyed all rights, title and interest in the two buildings and improvements to the City by quitclaim deed. On the same day, by means of a "Donation and SubLease Agreement," Kraft recognized this title conveyance and also sublet the underlying land to the City for a period ending April 29, 1986, one day before the termination of the original lease. The terms of the sublease provided that Kraft remain obligated as lessee under the original lease, but that the City assume all of Kraft's rights, duties and obligations under the lease, including those related to alienation of the property, payment of rent, taxes and assessments, upkeep costs, and the maintenance of adequate insurance. Kraft was to act as the City's agent concern-

ing any rights and obligations under the lease, including a stated option to extend the lease.

On July 9, 1984, the City exercised its right and option to extend its sublease of the land for a term ending April 29, 2016. The City directed Kraft, as its agent, to exercise Kraft's right and option to extend the lease agreement with Chicago Dock. The lease was subsequently extended by Kraft for a 30-year term, through April 30, 2016. As of 1986, the City's monthly rental obligation under the sublease was $2,696.66.

The Kraft buildings represent an area of 350,000 square feet of office space. City departments and agencies occupy the two Kraft buildings. Several of those departments and agencies include the cable commission, department of human services, health systems agency, mayor's commission on women's affairs, department of health, department of personnel, mayor's office of employment and training, public vehicle operations, department of consumer services-debt counseling center, Chicago police department and Chicago fire department. The buildings also contain a small cafeteria which provides food services to building employees. The City entered into a concession license agreement with a private vendor to occupy an area necessary to provide those services. The portion of the real estate not occupied by the two Kraft buildings is a parking lot, which is used solely for City vehicles by the traffic control division of the Chicago police department.

Sometime after acquiring the buildings in 1982, the City applied for and was granted a tax exemption as the property owner of the four parcels. The Department issued a certificate to the City approving an exemption for the 1984 assessment year and for all subsequent years provided the four parcels continued to meet "all qualifications" for exemption. In December 1987, however, the

Department notified the City that the four parcels would be placed on the tax rolls for 1988.

On January 6, 1988, the City filed an application for a 1988 tax exemption, under sections 19 and 19.6 of the Act, for the Kraft buildings and the underlying land. The application claimed that no income was derived from the property and the buildings were owned by a unit of local government. The City further maintained that section 19.6 allows for an exemption of such buildings with the underlying land. In response, the Department denied the application on the basis that the "property" was not in exempt ownership or in exempt use. Following a hearing, an administrative law judge determined that Chicago Dock owned the four parcels and recommended that the entire value of the land and its buildings be assessed against Chicago Dock for the 1988 tax year. The Department immediately approved this recommendation. Consequently, on May 13, 1988, the City filed a complaint in administrative review in the circuit court of Cook County.

During these proceedings regarding the 1988 tax year, the Cook County assessor's office notified the City that the four parcels would be subject to assessed valuation for the 1987 tax year. In response, the City filed a complaint with the Cook County board of tax appeals (the Board). Following a hearing, the Board found that the "property" was owned by a unit of local government and recommended to the Department that the entire property remain tax-exempt. The Department, however, overruled the Board's recommendation and on December 8, 1988, issued its own recommendation that the entire value of the land and the buildings be assessed against Chicago Dock for the 1987 tax year. On January 13, 1989, the City filed a second complaint in administrative review in the circuit court.

The two administrative review actions, filed in circuit court, were subsequently consolidated and are now before us on review.

## STANDARD OF REVIEW—BURDEN OF PROOF— PRESUMPTIONS

Where facts are undisputed, a determination of whether property is exempt from taxation is a question of law. (*Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331.) Thus, the decision as to whether property is exempt "depends solely upon an application of the appropriate legal standard to the undisputed facts." *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129.

"It is the well settled rule of law in the State of Illinois that all property is subject to taxation, unless exempt by statute, in conformity with the constitutional provisions relating thereto. Taxation is the rule—tax exemption is the exception." (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 289-90.) "Provisions granting tax exemptions are to be construed strictly and must come not only within the terms of the statute but also the authority given by the constitution." (*Rogers Park Post*, 8 Ill. 2d at 290.) Courts have no power to create exemption from taxation by judicial construction, and the burden of establishing statutory authority within the limitations of the constitution, for such an exemption rests upon the person asserting it. *People ex rel. Cannon v. Southern Illinois Hospital Corp.* (1949), 404 Ill. 66, 68, citing *Oak Park Club v. Lindheimer* (1938), 369 Ill. 462, 465-66.

Each individual claim must be determined from the facts presented. (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 394.) In determining whether property is included within the scope of a tax exemption all

facts are to be construed and all debatable questions resolved in favor of taxation. *Rogers Park Post*, 8 Ill. 2d at 290.

## SECTION 19.6 OF THE ACT AND ARTICLE IX, SECTION 6, OF THE ILLINOIS CONSTITUTION

Section 19.6 of the Act, "Property of political subdivisions," establishes a property tax exemption for "all *public buildings belonging to* any county, township, *city* or incorporated town, *with the ground on which such buildings are erected.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 500.6.

The legislature's ability to exempt property by the enactment of general legislation, such as section 19.6, is limited by article IX, section 6, of the Illinois Constitution of 1970, which provides:

> "The General Assembly by law may exempt from taxation *only the property of* the State, *units of local government* and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits." (Emphasis added.) (Ill. Const. 1970, art. IX, §6.)

It has always been the law of this State that this section of the constitution, and any statutes enacted under its provisions by way of general law, should receive a strict construction. (*People ex rel. Gill v. Trustees of Schools* (1936), 364 Ill. 131, 134.) Article IX, section 6, is not self-executing, but merely grants to the legislature, acting within the constitutional limitations imposed, the authority to enact legislation to exempt property from taxation. (*People ex rel. Paschen v. Hendrickson-Pontiac, Inc.* (1956), 9 Ill. 2d 250, 254.) Further, the enumeration in article IX, section 6, of the constitution of certain classes of property which may be exempted has been

held to be a limitation upon the power of the legislature to exempt any other property; it is beyond the power of the legislature to add to or broaden the exemptions which the constitution permits it to provide. See *Locust Grove Cemetery Association v. Rose* (1959), 16 Ill. 2d 132, 139; see also *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 95-96.

Article IX, section 6, of the Constitution of 1970, formerly article IX, section 3, of the Constitution of 1870, divides property which may be exempted by the legislature into two classes: (1) that owned by the State, counties or other municipalities; and (2) that used exclusively for the purposes defined in the second clause of the section. (See *People ex rel. Gill*, 364 Ill. at 136.) In the case of the section 19.6 exemption at issue here, ownership of the property is the determinative test. See Ill. Rev. Stat. 1987, ch. 120, par. 500.6 (which exempts "all public buildings *belonging to* any county, township, city or incorporated town" (emphasis added)); *Public Building Comm'n v. Continental Illinois National Bank & Trust Co.* (1963), 30 Ill. 2d 115, 122 (while public use is the test for exemption of certain property owned by certain political subdivisions (citing section 19.6, generally), for certain other municipal corporations the sole test is ownership); see also *Village of Oak Park v. Rosewell* (1983), 115 Ill. App. 3d 497, 501 (the test for exemption under section 19.6 turns solely on ownership of the property).

### EXEMPTION OF THE KRAFT BUILDINGS

There is no dispute that the Kraft buildings are owned by the City. Likewise, there can be no dispute that, under the plain language of the statute, the Kraft buildings clearly fall within the section 19.6 exemption as public buildings "belonging" to a city. We believe that the City has met its burden in this regard. The issue which arises, however, is whether the exemption may be

applied to exempt the buildings separate from the underlying land. We believe that section 19.6 may be applied to exempt the Kraft buildings. The Department has demonstrated no impediments to the application of the exemption in this case.

The Department first argues that the language of the section 19.6 exemption, "public *buildings* \*\*\* *with the ground*," and its developmental history, indicate that the exemption was intended only to operate so to exempt both buildings and underlying land. Further, the Department contends that, since there is an apparent constitutional impediment to the exemption of the land under the facts presented here, exemption of the Kraft buildings is also prohibited. We find, however, that this argument allows the "tail to wag the dog."

We have carefully reviewed the Department's analysis of section 19.6's historical development and we are not convinced that the provision's language and history alone may dictate such a result. Essentially, the Department points to the fact that the exemption has included the phrase "with the ground" rather than the phrase "and the ground" for 150 years, and that such construction and history indicates that the legislature never intended to exempt buildings separate from the underlying land. However, this phrase is just as susceptible of being interpreted to *permissibly* include the "ground," as it is of being interpreted to *mandate* that the ground be included. That this particular terminology has been utilized for some time does not necessarily support the Department's position.

We are similarly unpersuaded by the Department's argument that a previous 10-acre limitation within the exemption (Ill. Rev. Stat. 1874, ch. 120, par. 2) is significant, or that there is relevance to the timing of the enactment of the currently worded exemption provision in 1872 in relationship to the adoption of the 1870 constitu-

tion. In sum, it is simply not clear from the provision's language and history that buildings and land must be exempted together, under all circumstances; the language and history of the section 19.6 exemption are equivocal on this score. We rather believe that, given section 19.6's express statement that public buildings belonging to a city be exempt from taxation, the legislature could not have intended that this exemption turn on the mere fortuity that underlying land be also in exempt ownership.

The Department argues further that the "statutory framework for the assessment and collection of real property taxes" indicates that buildings cannot be exempted separately from the underlying land. Again, we disagree.

In its brief, the Department cites to the following statutory "scheme." Section 1(13) of the Act defines "land," "real estate" and "real property" as follows:

> "Not only the land itself ***, but also all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind *** and all rights and privileges belonging or in anywise pertaining thereto, except where the same may be otherwise denominated by this Act. Included therein is any vehicle or similar portable structure used or so constructed as to permit its being used as a dwelling place for one or more persons, if such structure is resting in whole on a permanent foundation." (Ill. Rev. Stat. 1987, ch. 120, par. 482(13).)

Section 27a of the Act provides in relevant part:

> "The owner of real property on January 1 in any year shall be liable for the taxes of that year ***.
> *** [T]he owner of real property *** shall be liable, on a proportionate basis, for the increased taxes occasioned by the construction of new or added buildings, structures or other improvements on such property from the date when such improvement was substantially completed ***." Ill. Rev. Stat. 1987, ch. 120, par. 508a.

We can discern nothing in this "scheme" that compels the conclusion that buildings may not be exempted separately from the underlying land. These provisions, which concern tax assessment, rather than tax exemption, indicate that an owner of real property is assessed taxes on the values of the land and its improvements. The provisions do not speak expressly or impliedly to the subject of exempt ownership of property under section 19.6. See *Sierra Club v. Kenney* (1981), 88 Ill. 2d 110, 126 (policy expressed in specific statutory reference prevails over general statutory statement).

The Department also cites to several assessment cases for the general proposition that the value of improvements is assessed against the landowner rather than the owner of the improvements. The Department thus attempts to argue that the taxes on the Kraft buildings should not be assessed separately from the land. First, we do not agree that the exemption of improvements and not the underlying land necessarily means that such improvements are assessed separately from the underlying land in all instances. Second, we do not find the cases cited by the Department persuasive with respect to this issue.

For instance, in *In re Tax Objections of Hutchens* (1976), 34 Ill. App. 3d 1039, the court considered the "scheme of assessment and taxation of real property" provided by various provisions of the Act. The provisions which the court referenced concern the process of tax assessment, extension and enforcement. Generally, these provisions utilize language describing land and improvements as a unit. The court believed that the provisions consistently treated real estate in this fashion and thus did not wish to disrupt this scheme by introducing the separate assessment of buildings and land. The court thus held that the "listing of a building as a separate en-

tity of real estate to be taxed [did] not meet the statutory requirements" for assessment, extension, or enforcement of taxes. (*Hutchens*, 34 Ill. App. 3d at 1042.) *Hutchens*, however, did not discuss the manner in which a separate exemption of buildings, or any exemption for that matter, might factor into the statutory framework provided for assessment and enforcement.

Furthermore, *Hutchens* is not grounded in the conceptual aspects of property or tax law, but rather upon practical considerations concerning the tax assessment and enforcement process. As such, *Hutchens* has little to offer within the exemption context. That the court in *Hutchens* wished to prevent "description problems" in the tax assessment and enforcement process (*Hutchens*, 34 Ill. App. 3d at 1043), by the adherence to the single assessment of both land and buildings, says nothing concerning the application of exemptions. See also *Showplace Theatre Co. v. Property Tax Appeal Board* (1986), 145 Ill. App. 3d 774, 776 (which relied on language in *Hutchens* stating that while the Act provides for a separate listing of the assessed value of land and improvements, the values together constitute a single assessment of the property).

The Department's general proposition that improvements are assessed with land is reinforced by *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, where this court held that the value of a leasehold estate is not separately assessable against the lessee. However, as in *Hutchens*, the issue of tax exemption did not arise.

In sum, these several cases cited by the Department do not offer much beyond the general principle that land and improvements are not separately assessed; we cannot extrapolate from these cases to find that buildings may not be subject to exemption separate from the underlying land under section 19.6.

The Department, however, also cites *Decatur Sports Foundation v. Department of Revenue* (1987), 156 Ill. App. 3d 623, which concerns both the separate assessment and exemption of improvements. In *Decatur Sports Foundation*, a charitable sports foundation sought exemption under section 19.7 of the Act for improvements, such as a baseball diamond, bleachers, dugouts, restrooms and fences, which it and third parties had built on land subleased by the foundation from a for-profit corporation. We note that section 19.7 provides an exemption for all "property" of charitable organizations. (Ill. Rev. Stat. 1987, ch. 120, par. 500.7.) No distinction is made between buildings and land within this exemption provision as is the case in section 19.6.

Although the matter came before the appellate court in *Decatur Sports Foundation* as a dispute concerning the exemption of improvements, the court's analysis concerned the proper assessment of taxes. Relying on *Hutchens*, 34 Ill. App. 3d 1039, the court concluded that since the improvements constituted part of the real property for purposes of assessment, taxes on the improvements should not have been assessed against the foundation. The landowner should have been assessed the value of the improvements along with the land. Thus, since the foundation "did not own the property," the court determined that the administrative decision which denied an exemption for the improvements was appropriate.

*Decatur Sports Foundation* is distinguishable from the instant case because *Decatur Sports Foundation* concerned the application of section 19.7, the exemption of "property," as opposed to section 19.6, which specifically exempts improvements, described as "buildings." Thus, when posed with the question of whether the foundation owned the "property," and what constituted such "property," the court in *Decatur Sports Foundation* resorted to *Hutchens*, 34 Ill. App. 3d at 1040, which relied

on a definition of real property as including "all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind." (Ill. Rev. Stat. 1987, ch. 120, par. 482.1(13).) Since *Hutchens* indicated that the landowner was the owner of the real property, *Decatur Sports Foundation* concluded that the foundation did not own the "property." The court in *Decatur Sports Foundation* was not confronted with an exemption such as section 19.6, which specifically and primarily addressed improvements as opposed to "property" in general.

Furthermore, the court in *Decatur Sports Foundation* stressed the fact that the county had assessed only improvements, but not the land. We believe that this focus resulted in the court's relying more heavily than necessary upon assessment considerations. We are therefore not convinced that *Decatur Sports Foundation* undertook the appropriate analysis to reach the issue of the section 19.7 exemption.

We have determined that there appears to be no statutory, constitutional, or tax law impediment to exemption of the Kraft buildings separate from the underlying land. We now refer to several decisions cited by the City which argue in favor of a partial exemption of real property. In *City of Lawrenceville v. Maxwell* (1955), 6 Ill. 2d 42, 49, this court determined that "[w]here property is used for two purposes, one of which is exempt from taxation and one of which is not, a tax should be assessed against the part which is devoted to a use not exempt from taxation." In *Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, a school sought exemption under sections 19 and 19.1 of the Act for a tract of property used for a school or other educational purposes. Once again, this court allowed an exemption for that portion of the tract which was in actual use for an exempting purpose. See also *People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. 2d 113; *Community Mental*

*Health Council, Inc. v. Department of Revenue* (1989), 186 Ill. App. 3d 73; *Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580; *Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272.

This line of cases indicates that there is no impediment which prevents the tax exemption of a portion of certain property and the taxation of the remainder based upon the "use" of such property. (Ill. Rev. Stat. 1987, ch. 120, par. 482 *et seq.*) The Department argues that these decisions do not support the City's position here because the City seeks to exempt buildings separate from land on the basis of the ownership. While the decisions do not address that precise issue, we cannot discount them. First, we attach no particular significance to the distinction as to the different tests for exemption; we believe that whether such test is use, ownership or a combination is irrelevant to the application of a partial or separate exemption. Furthermore, at the very least, *Maxwell* and *Skinner* demonstrate that the Act allows different portions of real property to be taxed and exempted on the basis of the relevant test for the exemption.

Based upon the arguments before us, we can discern no significant difference between an exemption which applies to only a portion of a tract, and an exemption which applies to only the improvements on a tract.

The City also directs our attention to a line of decisions which hold that a leasehold may be taxed separately where an exempt lessor has leased the real estate to a non-exempt lessee (the converse of the the present case). (See *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11; *People ex rel. Paschen v. Hendrickson-Pontiac, Inc.* (1956), 9 Ill. 2d 250.) These decisions concern the application of section 26 of the Act, which specifically allows for the separate assessment of

leaseholds held by non-exempt lessees where the record owner of the real estate, the lessor, is exempt. (See Ill. Rev. Stat. 1987, ch. 120, par. 507.) While these cases concern the application of section 26, nonetheless, they indicate, in a broader sense, that the separate treatment of an improved leasehold and the underlying real estate for purposes of assessment and exemption violates no principles of tax or property law.

Thus, we determine that in the instant case, the section 19.6 exemption may be applied to exempt the Kraft Buildings.

## EXEMPTION OF THE UNDERLYING LAND

The Department concedes the City's argument that the exemption, on its face, would seem to apply to the underlying land as well as to the Kraft buildings. We agree with the parties. The plain language of section 19.6, "buildings *** *with* the ground," indicates that the land under exempt buildings is included within the exemption (emphasis added) (Ill. Rev. Stat. 1987, ch. 120, par. 500.6). See *People v. Madison* (1988), 121 Ill. 2d 195, 200 (where this court stated that, in giving effect to the legislature's intention in enacting a statute, courts must give the language of the statute its plain and ordinary meaning, which is done by considering the legislative language itself).

We also agree with the City that there exists a presumption of constitutionality of legislation once it becomes the law of the State, and all reasonable doubts are to be resolved in favor of the legislation. (See *North Shore Post No. 21 of the American Legion v. Korzen* (1967), 38 Ill. 2d 231, 233.) However, the constitutionality of section 19.6 does not concern us here. We are instead concerned with whether a particular interpretation of section 19.6 comports with our constitution.

The Department correctly asserts that the exemption cannot be construed consistently with our constitution to

apply to the underlying land here because the City does not own the land. The City counters that ownership has been interpreted under the Act as substantially broader than the situs of legal title or ownership in fee simple. Because the exemption provisions of the Act implement article IX, section 6, and cannot broaden that authority, we find it unnecessary to separately interpret the constitutional provision. (See *People ex rel. Gill*, 364 Ill. at 134-35 (the constitutional provision does not of itself exempt any property from taxation, but merely grants the legislature the authority to enact legislation for exemption; the legislature cannot enlarge upon this grant of authority).) Thus, we may appropriately consider the manner in which the implementing legislation has been interpreted. As a result, we do not reach the City's argument which urges a liberal construction of article IX, section 6, inasmuch as a consideration of that argument is implicit in our review of case law interpreting the exemption provisions.

The Department relies upon several older decisions of this court which consider ownership within the context of tax exemption. (*People ex rel. Carr v. City of Chicago* (1926), 323 Ill. 68; *People ex rel. Harding v. City of Chicago* (1929), 335 Ill. 450; *People ex rel. McCullough v. Bennett Medical College* (1911), 248 Ill. 608.) In general, these cases hold that possession of a leasehold for a determinate period could not be considered ownership of real estate for purposes of tax exemption.

In *People ex rel. Carr*, 323 Ill. 68, the city held a 30-year lease of hospital property which included an option to renew twice for an additional 69 years. This court determined that the lease of 30 years, terminable by the city at the end of such period, "[did] not show title in the city." (*People ex rel. Carr*, 323 Ill. at 71.) Consequently, the property was held not to be entitled to tax exemption under section 2 of the Revenue Act (the predecessor to section 19.6) as property "belonging" to a city.

*People ex rel. Harding,* 335 Ill. 450, concerned the same hospital property at issue in *Carr. Harding* reveals that the city had originally subleased the property for a term of 30 years from the lessee, which held a lease with the owner for a term of 90 years. After *Carr* was decided, the city surrendered its 30-year sublease and became the assignee of the 90-year lease. This court found that, while a long-term lease or assignment thereof conveyed an interest in land, neither could be considered a sale so as to grant "absolute ownership." (*Harding,* 335 Ill. at 453-54.) The 90-year lease was for a fixed and determinate period and was conditioned upon the payment of a fixed, annual rent. Regardless of the assignment, there had been no change in status with respect to the title of the property, with the result that *Carr* was therefore conclusive of the case. *Harding,* 335 Ill. at 453-54.

*People ex rel. McCullough,* 248 Ill. 608, concerned the construal of a property tax exemption provision in the charter of a medical college incorporated by the legislature. As such, *McCullough* did not concern an interpretation of any statutory exemption under the Act. *McCullough* demonstrates, however, that possession of a leasehold estate, in and of itself, was not considered ownership for purposes of tax exemption under the school's charter. See also *People ex rel. Thompson v. St. Francis Xavier Female Academy* (1908), 233 Ill. 26; *People ex rel. McCullough v. Logan Square Presbyterian Church* (1911), 249 Ill. 9 (where legal title was considered to be determinative of ownership under the Act).

In contrast to the cases cited by the Department, the City relies upon more recent decisions of this court which consider ownership under the Act. In *Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, an issue concerned whether a not-for-profit charitable corporation owned a parcel of land, thus entitling it to a tax exemption under section 19.7 of the

Act (Ill. Rev. Stat. 1987, ch. 120, par. 500.7). The charitable corporation had made a substantial down payment and entered into a contract for a warranty deed for the purchase of the property. The contract provided that the corporation was responsible for real estate taxes and that no title, legal or equitable, would pass to it until the delivery of the deed or until the full purchase price was paid. The corporation had made monthly payments of $2,500, and occupied and used the property exclusively for charitable purposes for approximately two years.

This court found no difference between the contract for warranty deed and a more conventional purchase money mortgage financing arrangement, which would have qualified the property for an exemption. This court expressed the view that denying a charitable institution the benefit of an exemption because it relied upon an alternative form of financing, which did not convey legal title, ran counter to the purpose and policies underlying the exemption. Equitable ownership of property used exclusively for charitable purposes by a charitable organization was thus considered sufficient for purposes of exemption under section 19.7 of the Act. As stated by this court, "Where the legislature requires legal ownership, that obviously must be respected. Where it does not, actual ownership, legal or equitable, is proper." *Christian Action Ministry*, 74 Ill. 2d at 63.

The holding in *Christian Action Ministry* was confirmed in *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479. In *Chicago Title & Trust Co.*, the State sought to recover unpaid real estate taxes on land held in Illinois land trusts. Under section 27a of the Act, the "owner" of real property is liable for such taxes. (Ill. Rev. Stat. 1987, ch. 120, par. 508a.) The record revealed that the only attribute of ownership ascribable to the trustees was that of legal title. The court concluded that legal title alone could not be the decisive factor in determining ownership under

the Act; control of the property and the right to its benefits were considered more important in the context of tax law. "Revenue collection is not concerned with the 'refinements of title'; it is concerned with the realities of ownership." (*Chicago Title & Trust Co.*, 75 Ill. 2d at 489.) Accordingly, the court held that the beneficiaries, who had control of the property and the right to its benefits, were the owners and therefore liable for the unpaid real estate taxes. See also *People ex rel. Williamson v. City of Toulon* (1921), 300 Ill. 408, 413 (complete equitable title is sufficient to exempt property from taxation).

*Chicago Title & Trust Co.* and *Christian Action Ministry* indicate that to the extent that *Carr* and *Harding* are based upon distinctions of title alone, as opposed to the realities of ownership, their holdings have been implicitly overruled. We note that our appellate court has applied the more realistic approach to ownership, exemplified by *Christian Action Ministry* and *Chicago Title & Trust Co.*, when considering the Act's exemption provisions.

Three such appellate court cases, which concern leases, are illustrative. In *Southern Illinois University Foundation v. Booker* (1981), 98 Ill. App. 3d 1062, a State university sought exemption under section 19.5 for property of which it claimed ownership. Legal title to the property had been conveyed to a non-exempt foundation created by the university in order to finance the building of family housing through the Federal Housing Administration. The university was precluded from entering such financial agreements. By the terms of an agreement, the university leased the property from the foundation, managed, controlled and maintained the property as housing for its students, and paid annual rent in the amount of the mortgage and, as the foundation's agent, transmitted the monies to the lender. Upon retirement of the mortgage, title to the improved real estate was to be reconveyed to the university without payment for the transfer. On these facts, the

court concluded that the university, in fact, controlled the property and had the right to enjoy the benefits of the property in the manner of an owner in fee simple absolute. Consequently, the property was held to belong to the State and was thereby entitled to exemption.

Similarly, in *Cole Hospital, Inc. v. Champaign County Board of Review* (1983), 113 Ill. App. 3d 96, a not-for-profit hospital corporation sought exemption under section 19.7 of the Act. The corporation had conveyed legal title to hospital property to a private organization in order to secure financing for the construction of a new facility. The record showed that the corporation had a troubled financial history and had unsuccessfully sought conventional financing. The property was then leased-back to the hospital corporation for a term of 20 years with options to renew for two additional 10-year terms. The conveyance and lease back agreement provided that the corporation had the absolute option to purchase the property at 10 times the annual rental on subsequent anniversary dates. The agreement also provided that in the event a *bona fide* offer to purchase was received, the corporation had the right of first refusal. Further, in the event of a sale to a third party, all the terms of the lease remained in full force and effect, including the purchase and renewal options. All real estate taxes, insurance and maintenance costs were to be paid by the corporation.

The *Cole Hospital* court found the record to indicate that the sale-and-lease-back agreement was a financing device, alternative to conventional financing, and that there were sufficient incidents of ownership in the hospital corporation to qualify for an exemption. The property was thus held entitled to exemption under the Act.

A contrary result utilizing the same realistic approach to ownership was reached in *Wheaton College v. Department of Revenue* (1987), 155 Ill. App. 3d 945. *Wheaton College* concerned whether property held in a trust created

by a college and then leased to the college for use as student housing was exempt under section 19.1 of the Act (Ill. Rev. Stat. 1987, ch. 120, par. 500.1). Exemption turned on whether the college owned the property.

Wheaton College had entered into a "like-kind exchange of property agreement" with private individuals, whereby the college acquired several parcels of land in exchange for the creation of a trust whose corpus consisted of an apartment complex. Under the agreement, the college transferred title to the complex to a bank as trustee and the private individuals were the sole beneficiaries of the resulting trust. The college then entered into a 30-year lease of the complex. The terms of the lease provided that the college pay monthly rent, all taxes, utilities and insurance on the property. The college had the sole right to alter and remove or erect structures, or to sublet without the beneficiaries' consent. The college also had the right to repurchase the property for an additional sum of money upon the death of the beneficiaries' survivors; the beneficiaries and heirs had a reciprocal right to compel the college to repurchase at the designated price.

Based upon these facts, the court concluded that most, if not all, of the tax and other advantages inured to the private individuals, and that unlike the agreement in *Cole Hospital*, the "unusual" financing agreement in *Wheaton College* was not undertaken because the college was unable to obtain conventional financing for the purchase of the land parcels it had acquired. Further, unlike the charitable corporation buyer in *Christian Action Ministry*, the college had to pay additional monies at the conclusion of its 30-year lease to fully acquire the property. Finally, although the lease allowed the college several incidents of ownership, such as the right to remove existing structures and to sublet, it did not give others, such as the right to fully alienate the property.

In the court's view, such evidence indicated that the leasing arrangement was undertaken primarily to benefit the private individuals, rather than the college. The court therefore held that the Department's denial of exemption was not against the manifest weight of the evidence.

Applying this approach to ownership in the present case, we find that the sublease agreement of the underlying land primarily inures to the benefit of Chicago Dock, rather than the City. There is no evidence that this sublease was entered into so that the City could advantageously finance the purchase of the property, as in *Christian Action Ministry, Cole Hospital* or *Southern Illinois University Foundation.* Further, although the sublease agreement allows the City several incidents of ownership, such as possession, the right to build or remove structures, and the right to sublet the property, Chicago Dock nevertheless holds the legal title, enjoys the benefits of the property in the form of accelerating annual rental payments, will reacquire full possession of the land, and will even acquire legal title to the Kraft buildings at the termination of the sublease. That the City is obligated to pay all taxes and assessments, maintenance and insurance costs does not support the City's position as to its ownership of the land; there is no evidence in the record, such as a reduction in rent, that such payments did not inure to the benefit of Chicago Dock. We also note that under the sublease agreement, Kraft remains obligated as lessee to Chicago Dock and also acts as the City's agent concerning the City's assumption of Kraft's rights and obligations under the lease.

Based upon these facts, we cannot say that the underlying land is owned by the City so as to allow for tax exemption under section 19.6 of the Act. Article IX, section 6, of the constitution was intended to be strictly interpreted so as to attain its object, *viz.,* that property should bear its just portion of taxation and that there be no fa-

vored class. (See *People ex rel. Gill*, 364 Ill. at 134.) Section 19.6 may not be interpreted, consistent with the constitution, to exempt the land underlying the two Kraft buildings.

The City offers the additional argument that the taxation of the "property" would be contrary to the purpose of the Act's exemption provisions. We disagree. The purpose and object of the exemption provisions of the Act are to free property controlled and used by public bodies for public use from the burdens of taxation under circumstances where the property interests are neither transient nor trivial. (See *In re Application of County Collector* (1976), 44 Ill. App. 3d 327, 332.) The *use* of leased land for municipal purposes, by itself, does not provide the basis for an exemption under section 19.6. (See *Village of Oak Park v. Rosewell*, 115 Ill. App. 3d at 501 (there is no separate exemption of land *used* for municipal purposes under section 19.6).) We have determined that the land underlying the Kraft buildings does not qualify for tax exemption on the basis that the City has evidenced insufficient incidents of ownership. Whether the City has chosen to contractually assume the tax obligation for the underlying land is beside the point. Taxation of the land would not be contrary to the purpose of the Act's exemption provisions.

Accordingly, we affirm the judgment of the appellate court.

*Appellate court affirmed.*