(No. 78580.—Appellate court judgment vacated; circuit court judgment affirmed in part and reversed in part; cause remanded.)

CHICAGO PATROLMEN'S ASSOCIATION *et al.*, Appellees, v. THE DEPARTMENT OF REVENUE, State of Illinois, Appellant.

*Opinion filed March 21, 1996.*

HARRISON, J., took no part.

James E. Ryan, Attorney General, of Springfield (Rosalyn B. Kaplan and Barbara A. Preiner, Solicitors General, and Mary E. Welsh, Assistant Attorney General, of Chicago, of counsel), for appellant.

Michael T. Reynolds and Patrick C. Turner, of the Law Offices of Victor J. Cacciatore, of Chicago, for appellees.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The plaintiffs, the Chicago Patrolmen's Association and the American Police Center and Museum, filed a complaint in the circuit court of Cook County for administrative review of a decision by the Department of Revenue of the State of Illinois (Department). The Department denied the plaintiffs a charitable tax exemption from property taxation for four parcels of real property. The circuit court set aside the Department's decision and granted an exemption for 100% of two of the parcels, and 98% of a third parcel. The appellate court affirmed, with one justice dissenting. 269 Ill. App. 3d 274. We allowed the Department's petition for leave to appeal. 145 Ill. 2d R. 315.

The main issue is whether property used primarily for charitable purposes is entitled to an exemption from taxation under section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 500.7) where two organizations each own "an undivided 50% interest" in the property and only one is a charitable organization.

FACTS

On May 5, 1987, the Chicago Patrolmen's Associa-

tion (Association) and the American Police Center and Museum (Museum) became the beneficiaries of a land trust. The land trust's *res* consists of four adjacent parcels of property, located at 1705-25 South State Street in Chicago. Under the terms of the trust agreement, the Association and the Museum each have "an undivided 50% interest" in the property as the beneficial owners. The trustee, Lakeside Bank, holds legal title to the property. The Association and the Museum jointly secured and guaranteed a bank loan in the amount of $100,000 around the time the property was purchased.

The plaintiffs later applied for an exemption from property taxation for the 1987 tax year. The plaintiffs claimed that the entire property was exempt under section 19.7 (Ill. Rev. Stat. 1987, ch. 120, par. 500.7). The board of appeals of Cook County approved the exemption. The Department's Board of Appeals recommended that a partial-year exemption be granted from May 8, 1987, through December 31, 1987. The Department's director rejected the recommendations and denied the exemption.

The plaintiffs requested a formal hearing on the matter, which was conducted before an administrative law judge. The plaintiffs presented the testimony of Joseph Pecoraro, the president of the Association and the chairman of the board of the Museum. Numerous exhibits were also offered into evidence, including the organizations' articles of incorporation, financial statements, and tax records.

The Association's purpose, according to Pecoraro, is to "champion the cause" of police officers who work for the City of Chicago. Members go to Springfield and "act as a union" in order to encourage legislation that would "make the policeman's job easier." The Association collects dues from, and provides death benefits to, its

members. The Association is a not-for-profit corporation. The Association lacks tax-exempt status as a charity under section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. § 501(c)(3) (1988)).

The Museum contains artifacts and exhibits about police officers, their training, and how they function. The Museum is open to the general public. The Museum does not charge admission, although there is a donation box at the door. Approximately 20,000 children tour the Museum each year. Most of the Museum's activities are directed toward children, and many of the exhibits and programs are designed to alert children to the dangers of drug abuse, to instruct them on street awareness, and to promote better relationships between young people and the police. The Museum has tax-exempt status as a charity under section 501(c)(3) (26 U.S.C. § 501(c)(3) (1988)).

From 1972 to 1987, the Museum was located elsewhere. The property on South State Street was acquired in May 1987 so that the Museum could expand. The property contains three brick buildings and a parking lot. The plaintiffs spent the remainder of 1987 and early 1988 renovating the property in preparation for the Museum's reopening.

The Museum reopened in May 1988. Since then, the Museum has used all the property for its charitable purposes, with the exception of (1) 160 square feet used by the Association for office space and (2) the northern-most building, which remains vacant. The parking lot has been used only for the Museum.

The Association and the Museum allow other civic groups and charitable organizations to use the property free of charge, upon request. The Museum pays the mortgage on the property. The Association and the Museum each pay for building operating expenses based on the relative portion of the property occupied. As a

result, the Museum incurs an estimated 90% of the operating and upkeep expenses. The Museum pays these expenses out of funds donated to it by contributors.

The Department found that the Museum is a charitable organization and that the portions of the property occupied by the Museum were used for charitable purposes. The Department further found that the Association is not a charitable organization, noting that it serves primarily to benefit its members. Because the Association, a noncharitable organization, owns an undivided 50% interest in the property, the Department denied the plaintiffs' request for a charitable tax exemption *in toto.*

The plaintiffs filed a complaint in the circuit court for administrative review of the Department's decision. The circuit court held that the Association's lack of status as a charitable organization and its ownership interest in the property were irrelevant. The circuit court found the plaintiffs' primary use of the property to be controlling of the exemption issue. Accordingly, the circuit court remanded the matter to the Department with instructions to determine if the Museum had primary use of the property and, if so, whether the property should be granted a full or partial exemption.

After remand, the Department issued an order in compliance with the circuit court's instructions. The Department found that all the property was used by the Museum for charitable purposes for 66% of the calendar year 1987, with the exceptions of the vacant building and of the 160 square feet used by the Association for office space.

The circuit court entered its final order on August 14, 1992, ruling as follows. The property's first parcel, consisting of the parking lot, was entitled to a 100% exemption because it was used exclusively by the Museum. The second parcel, consisting of a building,

was entitled to a 100% exemption because it was used exclusively by the Museum. The third parcel, consisting of a building, was entitled to a 98% exemption because, with the exception of the 160 square feet (or 2%) of Association office space, it was used exclusively by the Museum. The fourth parcel, consisting of the vacant building, was not entitled to any exemption. As noted, the appellate court affirmed the circuit court's decision over the dissent of one justice.

## ANALYSIS

We note initially that the plaintiffs have never challenged the Department's denial of tax-exempt status for the fourth parcel of land with the vacant building. As a result, this case concerns only whether the plaintiffs were properly granted an exemption for 100% of the first two parcels, and 98% of the third parcel (hereinafter referred to as the property at issue).

The Department contends that none of the property at issue is entitled to a charitable tax exemption because of the Association's undivided 50% ownership interest. According to the Department, to allow an exemption under the facts of this case would be "a breathtaking expansion" of the charitable exemption provided by section 19.7.

The Illinois Constitution of 1970 provides:

> "*The General Assembly by law may exempt from taxation only* the property of the State, units of local government and school districts and *property used exclusively for* agricultural and horticultural societies, and for school, religious, cemetery and *charitable purposes.*" (Emphasis added.) Ill. Const. 1970, art. IX, § 6.

This provision is not self-executing, but merely authorizes the General Assembly to enact legislation that exempts property from taxation, within the constitutional limitations imposed. *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 492-93 (1992).

Pursuant to this constitutional grant of power, the

legislature adopted section 19.7 of the Revenue Act of 1939, which exempts from real estate taxation *"[a]ll property of institutions of public charity, all property of beneficent and charitable organizations,* whether incorporated in this or any other state of the United States, \*\*\* *when such property is actually and exclusively used for such charitable or beneficent purposes,* and not leased or otherwise used with a view to profit." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 500.7. This court has interpreted section 19.7 as requiring two things to qualify property for a charitable tax exemption: (1) charitable use and (2) ownership by a charitable organization. *Christian Action Ministry v. Department of Local Government Affairs,* 74 Ill. 2d 51, 61 (1978); *Coyne Electrical School v. Paschen,* 12 Ill. 2d 387, 397 (1957).

The Department concedes that the charitable-use requirement has been met here. See *City of Lawrenceville v. Maxwell,* 6 Ill. 2d 42, 49 (1955); *City of Mattoon v. Graham,* 386 Ill. 180 (1944). The Department also agrees that the Museum is a charitable organization. Nonetheless, the Department insists that the ownership requirement has not been met because the Association, a noncharitable organization, owns an undivided 50% interest in the property. Succinctly stated, then, the determinative issue in the instant case is whether the property is owned by a charitable organization within the meaning of section 19.7.

Parenthetically, we note that another requirement is apparent from section 19.7's plain language: the property cannot be "leased or otherwise used with a view to profit." Ill. Rev. Stat. 1987, ch. 120, par. 500.7. The Department does not argue that the property is being used with a view to profit, nor does the record support such a view. Consequently, the plaintiffs have met this requirement for exemption under section 19.7.

The legal principles guiding our decision are well

established. Where facts are undisputed, as here, a determination of whether property is exempt from taxation is a question of law. *City of Chicago*, 147 Ill. 2d at 491. Statutes exempting property from taxation are to be strictly construed in favor of taxation. *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326, 331 (1989). The burden of proving the right to exemption rests upon the party seeking it. *Wesley Willows v. Munson*, 43 Ill. 2d 203, 207 (1969). Each individual claim for exemption must be determined from the facts presented. *Coyne Electrical School*, 12 Ill. 2d at 394.

A

The plaintiffs first challenge the Department's finding that the Association is not a charitable organization. According to the plaintiffs, the Association qualifies as a charitable organization "with regard to [its] ownership and use" of the property at issue.

The parties agree that the Association, which lacks tax-exempt status under section 501(c)(3) (26 U.S.C. § 501(c)(3) (1988)), can qualify as a charitable organization only by satisfying the criteria set forth in *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149 (1968). These criteria include, among other things, that the organization's benefits are for an indefinite number of persons, that funds are derived mainly from public and private charity, and that charity is dispensed to all who need and apply for it. *Methodist Old Peoples Home*, 39 Ill. 2d at 156-57.

We agree with the Department's determination that the Association fails to meet these criteria. The Association's purpose is to benefit Chicago police officers, not an indefinite number of persons. This purpose is evidenced by the Association's constitution and bylaws, which unambiguously state that its objects are to promote a fraternal spirit among Chicago police officers

and to act as a representative of their interests concerning wage negotiations and working conditions. Pecoraro, the president of the Association, shared this view. He testified that the Association's purpose was to "champion the cause" of Chicago police officers and to "act as a union" by encouraging legislation that would "make the policeman's job easier." In addition, although a charity should derive its funds mainly from private and public charity, the Association's tax records show that its income is derived mainly from dues. In conclusion, the Association is not a charitable organization because it serves primarily to benefit its members.

The plaintiffs appear to argue that, despite the overall nature of the Association as a noncharitable organization, the Association nevertheless qualifies as a charitable organization in part—that is, "with regard to [its] ownership and use" of the property at issue. The plaintiffs cite no case law and provide no argument in support of this novel proposition. The Department responds that, under the plaintiffs' theory, any owner who allows a property to be used by a charitable organization would automatically become a charitable organization in its own right. According to the Department, this would impermissibly meld section 19.7's distinct requirements of charitable use and ownership. We find the Department's position more persuasive given the arguments before us. Therefore, we reject the plaintiffs' assertion that the Association is a charitable organization.

B

The plaintiffs next maintain that the property at issue is entitled to an exemption regardless of the Association's status as a noncharitable organization. They submit that the ownership requirement has been met because the Museum, a charitable organization, owns an undivided 50% interest in the property, which is in effect an ownership interest in the whole property.

The definition of an "undivided" interest in property is relevant here. The parties agree that an undivided interest is by its nature an interest in the whole rather than an interest in any particular part of the property. See, *e.g.*, *Lueth v. Goodknecht*, 345 Ill. 197, 200 (1931) (holding that an undivided interest in partnership property is an individual interest in the whole). As a result, it is undisputed that the Museum and the Association each have ownership rights to the whole property, not an individual interest in half of it.

The plaintiffs' position is that, since the Museum has ownership rights to the whole property, the ownership prong of the test has been satisfied. We cannot accept this simplistic approach to ownership. Under this theory, any undivided ownership interest in property, whether 5% or 95%, would automatically qualify the property for a full exemption. Such a view of ownership is not consistent with prior decisions of this court, where a realistic approach to ownership has been applied. See, *e.g.*, *City of Chicago*, 147 Ill. 2d at 505; *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 489-92 (1979). Consequently, this argument is without merit.

## C

The plaintiffs assert that the Museum is the owner of the property at issue under the realistic approach to ownership. They claim that the Association has relinquished its ownership interest to the Museum. After reviewing the relevant precedents, we disagree.

This court has long held that, in determining ownership of property for tax purposes, legal title alone is not the decisive factor; rather, the concern is with the "realities of ownership." *City of Chicago*, 147 Ill. 2d at 505; *Chicago Title & Trust Co.*, 75 Ill. 2d at 489-92. Under this test, the key elements of ownership are control and the right to enjoy the benefits of the property. *City of Chicago*, 147 Ill. 2d at 505; *Chicago Title & Trust Co.*, 75 Ill. 2d at 489.

Several cases illustrate the application of the realistic approach to ownership. See, *e.g.*, *City of Chicago*, 147 Ill. 2d at 505-08 (collecting and analyzing cases). In *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 489-92 (1979), this court held that the beneficiaries of a land trust were the owners of property for purposes of real estate taxation because they had control of the property and the right to its benefits. Although the trustee held legal title to the land, the trustee lacked any other indicia of ownership. The court explained: "Indeed, there is not a single attribute of ownership, except title, which does not rest in the beneficiary. The rights of creation, modification, management, income and termination all belong to the beneficiary." *Chicago Title & Trust Co.*, 75 Ill. 2d at 492.

In *Christian Action Ministry v. Department of Local Government Affairs*, 74 Ill. 2d 51 (1978), this court held that an installment-contract purchaser of property was entitled to a charitable tax exemption under section 19.7. Under the contract, the purchaser made a substantial down payment, assumed possession of the property, and continued making monthly payments toward the full purchase price. The contract stated that no title, legal or equitable, would pass to the purchaser until the full purchase price was paid. This court allowed the exemption, finding the purchaser to be the equitable owner in reality. To deny a charitable institution the benefit of an exemption because it relied on an alternative form of financing would run counter to the purposes and policies underlying the exemption, the court explained. *Christian Action Ministry*, 74 Ill. 2d at 62.

In *Cole Hospital, Inc. v. Champaign County Board of Review*, 113 Ill. App. 3d 96 (1983), the appellate court held that a hospital-lessee under a certain sale-and-lease-back agreement had sufficient incidents of ownership in a property to entitle it to a charitable tax exemp-

tion under section 19.7. The hospital had conveyed legal title to hospital property to a private organization so that it could secure financing to build a new facility. The hospital had a troubled financial history and had failed in its efforts to obtain conventional financing. The property was then leased back to the hospital for a term of 20 years, with specified options to renew. The sale-and-lease-back agreement gave the hospital the absolute option to purchase the property at 10 times the annual rental on subsequent anniversary dates, and a right of first refusal. All the terms of the lease remained in full force and effect in the event of a sale to a third party. The hospital was responsible for paying all real estate taxes, insurance, and maintenance costs. The appellate court approved the exemption because the sale-and-lease-back agreement was undertaken as an alternative to conventional financing and the lease gave the hospital-lessee several significant incidents of ownership in the property.

A different result was reached in *Wheaton College v. Department of Revenue*, 155 Ill. App. 3d 945 (1987). There, the appellate court held that a college-lessee did not have sufficient incidents of ownership in a property to qualify it for an exemption under section 19.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 500.1 (also requiring ownership)). The property at issue consisted of an apartment complex held in trust. A trustee-bank held legal title to the land. The trust's sole beneficiaries were private individuals. After the trust was created, the college entered into a 30-year lease of the complex. The terms of the lease gave the college only the rights to change existing structures and to sublet. The college paid the monthly rent, all taxes, utilities, and insurance on the property. The appellate court found that the benefits of the leasing agreement inured primarily to the private individuals-beneficiaries, not

the college. The court then concluded that the lease did not give the college sufficient incidents of ownership in the property to qualify it for an exemption under section 19.1.

An application of the realistic approach to ownership in the present case reveals the following. Here, the Association and the Museum each have an undivided 50% interest in the whole property as co-beneficiaries of the land trust. Under the terms of the trust agreement, they have the same rights of creation, modification, management, income, and termination. The trustee holds legal title to the property, but lacks any other indicia of ownership. As a result, the Association and the Museum have equal control and the equal right to enjoy the benefits of the property. Therefore, the Association and the Museum are the equal co-owners of the property. See *Chicago Title & Trust Co.*, 75 Ill. 2d at 489-92.

The plaintiffs nonetheless assert that the Museum has the controlling ownership interest in the property because it occupies most of the property, manages the property's day-to-day operations, and pays all the mortgage and most of the operating expenses. The plaintiffs claim that the Association, by allowing the Museum to do these things, has in effect relinquished its ownership interest in the property to the Museum.

These facts do not support a finding that the Association has relinquished its undivided 50% ownership interest to the Museum. Although the Museum has the primary possessory interest in the property, manages the property, and pays the mortgage, the Association continues to retain equal control over that property. Moreover, both organizations still maintain an equal right to enjoy the benefits of the property. In fact, both organizations are benefiting from the property under their arrangement: the Museum benefits from its oc-

cupation of the property; the Association benefits because it maintains an ownership interest in the property without having to pay any of the mortgage.

The cases discussed above support our finding. Like the private individual-beneficiaries in *Wheaton College*, where the exemption was denied, the Association here continues to retain considerable ownership interests in the property.

Unlike in *Christian Action Ministry* and *Cole Hospital, Inc.*, where the exemptions were granted, here there is no evidence that the Museum was not able to obtain financing to purchase the property itself. The record simply notes, without explanation, that the Association and the Museum jointly secured and guaranteed a bank loan in the amount of $100,000 around the time the property was purchased.

Lastly, unlike the appellate court majority, we find this situation distinguishable from those instances involving leases. *Cf. Wheaton College*, 155 Ill. App. 3d 945; *Cole Hospital, Inc.*, 113 Ill. App. 3d 96. Here, there is no lease agreement at all. Rather, the record supports the view that the Association and the Museum merely have an informal arrangement whereby the Association allows the Museum to occupy the property and, in exchange, the Museum pays all the mortgage.

The foregoing analysis shows that the Association has not relinquished any of its 50% ownership interest in the property. Consequently, we reject the plaintiffs' claim that the Museum is the controlling owner of the property under the realistic approach to ownership.

Summarizing, our application of the "realities of ownership" test in this case leads to the inescapable conclusion that the Association and the Museum are equal co-owners of the property. The Association is a noncharitable organization, and the Museum is a charitable organization.

## D

We turn now to the primary issue in this case, namely, whether property is entitled to an exemption under section 19.7 where two organizations each own an undivided 50% interest in the property and only one is a charitable organization. This appears to be the first case to arise under section 19.7 involving ownership by more than a single entity.

As earlier noted, the Department's position is that the property is entitled to no exemption because the Association, a noncharitable organization, owns an undivided 50% interest in that property. The plaintiffs counter that the Department's construction is unfair because it in effect negates the Museum's undivided 50% ownership interest. They point out that section 19.7's plain language exempts from taxation *"[a]ll* property *of* \*\*\* charitable organizations."* (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 500.7. According to the plaintiffs, the Department's interpretation of section 19.7 runs counter to the legislative purposes behind section 19.7 because it (1) wrongly renders meaningless that portion of the statute stating that "all" property of charitable organizations is exempt, and (2) improperly interprets the word "of" to mean "exclusively owned by." The plaintiffs therefore request at least a 50% exemption in recognition of the Museum's undivided 50% ownership interest.

The Department replies that the plaintiffs have waived any claim to a 50% exemption, as this idea was first raised not by them, but by Justice Rakowski in his dissent. See 269 Ill. App. 3d at 279-80 (Rakowski, J., dissenting). The rule of waiver is a limitation on the parties, not the courts. *Welch v. Johnson,* 147 Ill. 2d 40, 48 (1992). We choose to address this issue in furtherance of our responsibility to reach a just result. See *Welch,* 147 Ill. 2d at 48.

As previously noted, section 19.7 must be strictly

construed in favor of taxation. *Harrisburg-Raleigh Airport Authority*, 126 Ill. 2d at 331. Even under a strict construction, however, we fail to find support for the Department's position that no exemption should be granted here. Section 19.7's plain language exempts from taxation "*[a]ll* property *of* *** charitable organizations *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 500.7. We have already determined that, under the realistic approach to ownership, the Museum is the owner of an undivided 50% interest in the property. With the exception of ownership, the Department concedes that the property meets all the requirements for a section 19.7 exemption. Under these facts, we hold that the property at issue is entitled to an exemption in an amount equal to the actual percentage of the property owned by the Museum, which is 50%. This holding is consistent with the policy objective behind the charitable tax exemption, which is to encourage charitable activity. See *Christian Action Ministry*, 74 Ill. 2d at 62. This holding is also consistent with section 19.7's requirement of ownership by a charitable organization.

Although the exact issue now before us has never been addressed, there are cases supporting the grant of a partial exemption. Partial or separate exemptions based on use have long been allowed. For example, in *Maxwell*, 6 Ill. 2d at 49, this court held: "Where property is used for two purposes, one of which is exempt from taxation and one of which is not, a tax should be assessed against that part which is devoted to a use not exempt from taxation." A similar exemption based on use was permitted in *Illinois Institute of Technology v. Skinner*, 49 Ill. 2d 59, 65-66 (1971).

This court was called on to extrapolate from the

rules set forth in *Maxwell* and *Skinner* in *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 500 (1992). There, the issue was whether underlying land could be exempted separately from the buildings and improvements on that land. The underlying land was owned by a nonexempt private entity, while the buildings and improvements were owned by the City of Chicago, an exempt entity under the relevant statutory provision. This court stated:

> "[Cases like *Maxwell* and *Skinner*] indicate[ ] that there is no impediment which prevents the tax exemption of a portion of certain property and the taxation of the remainder based upon the 'use' of such property. [Citation.] The Department argues that these decisions do not support the City's position here because the City seeks to exempt buildings separate from land on the basis of the ownership. While the decisions do not address that precise issue, we cannot discount them. First, we attach no particular significance to the distinction as to the different tests for exemption; *we believe that whether such test is use, ownership or a combination is irrelevant to the application of a partial or separate exemption.* Furthermore, at the very least, *Maxwell* and *Skinner* demonstrate that the Act allows different portions of real property to be taxed and exempted on the basis of the relevant test for the exemption." (Emphasis added.) *City of Chicago*, 147 Ill. 2d at 500.

The *City of Chicago* court thus held that, for exemption purposes, the underlying land could be treated separately from its buildings and improvements on the basis of ownership.

The above cases show that partial or separate exemptions based on use are allowed, as are separate exemptions based on ownership. Given the emphasized language in *City of Chicago*, we have no difficulty here allowing the Museum a partial exemption based on its ownership.

The Department's final contention remains to be addressed. The Department asserts that this court should

not adopt a rule "quantifying" ownership interests because to do so would present an impossible task in practice.

We are not persuaded by the Department's argument of impossibility. As always, the burden of proving the right to an exemption rests upon the party seeking it. *Wesley Willows*, 43 Ill. 2d at 207. Thus, in those instances where it truly is impossible to quantify ownership interests, the party seeking the exemption will fail to meet its burden of proof and will not be entitled to any exemption. The plaintiffs here have met their burden of proof through their showing that the Museum, a charitable organization, owns an undivided 50% interest in property that otherwise qualifies for an exemption under section 19.7. Accordingly, the property at issue is entitled to a partial exemption of 50%.

## CONCLUSION

The property at issue is entitled to a partial exemption of 50% based on the Museum's undivided 50% ownership interest. The judgment of the appellate court is vacated, the judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment vacated;*
*circuit court judgment affirmed*
*in part and reversed in part;*
*cause remanded.*

JUSTICE HARRISON took no part in the consideration or decision of this case.