COLE HOSPITAL, INC., Plaintiff-Appellee, *v.* CHAMPAIGN COUNTY BOARD OF REVIEW *et al.*, Defendants-Appellants.—(Marty Finney, Township Assessor, Defendant.)

Fourth District   No. 4—82—0473

Opinion filed March 3, 1983.

Thomas J. Difanis, State's Attorney, of Urbana (Trisha Crowley, Assistant State's Attorney, of counsel), for appellants.

J. Michael O'Byrne and Nancy Menard Riddle, both of Reno, O'Byrne & Kepley, of Champaign, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The defendants, Champaign County Board of Review, Ormond Hixson as Champaign County Collector, and Thomas Difanis as Champaign County State's Attorney (County) appeal an order of the circuit court of Champaign County which enjoined them from assessing and collecting property taxes for 1981 and succeeding years on a portion of the premises occupied by the plaintiff, Cole Hospital, Inc. (Cole). At issue is the long-standing competition between two competing public policies: encouragement of charitable works through tax exemption versus preservation of the property tax base. It is unlikely that anything more than an uneasy truce will ever be found between them. The general rules are almost simplistic in doctrine, but taxing authorities and courts will be called upon to struggle endlessly with their application, a situation not entirely unfamiliar in many areas of the common law.

There is no serious dispute concerning the factual background of the case; the facts were stipulated by the parties. Cole was originally organized as a for-profit Delaware corporation; in 1976 it amended its articles of incorporation to become a not-for-profit corporation and the Illinois Secretary of State issued a certificate of authority to that effect. Thereafter, the United States Internal Revenue Service issued an appropriate determination that Cole was exempt from Federal taxes.

These steps were taken as part of a rebuilding and replacement project by Cole. It had previously occupied an old mansion which did not meet the requirements of the fire code or for accreditation by the Joint Commission on Accreditation of Hospitals and other State requirements. A new structure was completed, and the old mansion was abandoned as a patient care facility.

Cole sought the issuance of State revenue bonds to finance the construction, but because of Cole's financial situation, the State declined to issue them without the backing of a private investor. Cole was unable to find such a person and then explored numerous other sources of financing without success. Somewhere in the process it became aware of Safe Care, Inc., of Seattle, Washington. The exact nature of this organization is nowhere found in the record.

A deal was struck between Cole and Safe Care, Inc., whereby Safe Care would advance to Cole the sum of $5½ million for construction of the new facility. As part of the transaction Safe Care required a conveyance and lease-back arrangement. The ostensible purpose was to permit Safe Care, in the event of default by Cole, to acquire the property immediately without foreclosure proceedings and to resell or relet it.

The conveyance to Safe Care and the lease back to Cole were executed on March 30, 1978. It is this lease which forms the core of the controversy. The trial court held that sufficient incidents of ownership remained in Cole to sustain exemption. Another lease of a nearby property was also involved in the trial court proceedings. The court held it not to be exempt, and Cole has not appealed this aspect of the order. Our concern here, then, is solely with the Safe Care lease.

That document consists of 24 closely printed pages, plus seven additional pages consisting of an index, addenda, legal descriptions and a plat. It would obviously serve no good purpose to set it forth in full in this opinion, since much of it consists of standard provisions found in such leases. We will note and comment on only the provisions which we consider salient to our decision.

Certain fundamentals are not disputed by the parties. First, the property covered by the Safe Care lease contains both the hospital facilities and parking lots described in sections 19.7 and 19.16 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, pars. 500.7, 500.16). Second, that exemption under the foregoing sections requires both ownership and use by a charity. Third, that the question presented here is one of law, since the operative facts are not in dispute.

In its brief and in oral argument the County has conceded that Cole is a charitable organization and that the property is devoted to a charitable use. The contentions revolve around the question of ownership. The County contends that the lease arrangement has divested Cole of sufficient incidents of ownership that it can no longer meet this prong of the test for exemption, although it admits that absolute ownership is not required. Cole, *contra,* contends that the lease arrangement is in substance a financing method and that it has retained

sufficient ownership to meet any such requirement.

■ Recent decisions of our supreme court (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540; *Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 383 N.E.2d 958) have made clear that in Illinois the concept of "ownership" is broader than the mere *situs* of legal title. In *Chicago Title & Trust* the court held that revenue collection is not concerned with refinements of title but with the realities of ownership, and although title is to be considered as one factor, it is not decisive. Control and the right to benefits of property are of far greater importance.

That legal title is not required was also expressed in *Christian Action Ministry*. There the Ministry, a charitable organization, was purchasing property on a contract for warranty deed. The title, legal or equitable, would not pass until payment for the property was completed pursuant to terms of the contract. The court disagreed with the department's contention that only legal title would satisfy section 19.7's ownership requirements. The court noted that Ministry had been forced to obtain alternate financing arrangements and that it could not be penalized for failing to obtain conventional financing.

The court went on to state that although statutes granting tax exemptions must be strictly construed in favor of taxation, equitable ownership of property by a charitable organization for charitable purposes could be readily accommodated by section 19.7. The court expressly stated that it was not expanding the area of qualification for tax exemptions. Where the legislature requires legal ownership, it must be respected. However, where it does not, actual ownership, legal or equitable, is proper. The court went on to find that the facts presented in *Christian Action Ministry* evidenced ownership as contemplated by the legislature.

The County has pointed to two old lease cases in which the supreme court held that exemption would not apply. (*People ex rel. Carr v. City of Chicago* (1926), 323 Ill. 68, 153 N.E. 725; *People ex rel. Harding v. City of Chicago* (1929), 335 Ill. 450, 167 N.E. 79.) While not expressly overruled, the holding in these cases may be questioned in the light of the later opinions in *Chicago Title & Trust* and *Christian Action Ministry*. Both *Carr* and *Harding* concerned themselves with refinements of title, and the reported opinions give no indication as to what, if any, incidents of ownership were retained by the hospital which was the subject of the litigation. As will be more fully explained below, many such incidents were retained by Cole in the instant case.

Nor are the cases of *People ex rel. Baldwin v. Jessamine Withers Home* (1924), 312 Ill. 136, 143 N.E. 414, and *Monticello Female Seminary v. People* (1883), 106 Ill. 398, helpful. Both of them were concerned with charitable use, and as we have already indicated, the County has conceded that use is not an issue here.

■ The focus is then narrowed to the sole question of law: does the Safe Care lease so divest Cole of ownership that it can no longer qualify for exemption? We believe not, and affirm the trial court's finding. The features of that lease and the elements in the record which lead us to that conclusion will be briefly discussed.

. The record is undisputed that Cole made extensive efforts to obtain private financing. It approached a major lender in New York, management corporations, hospital management corporations, bond underwriters, commercial mortgage lenders, and the city of Champaign, all without success. Cole should not be penalized for failure to obtain conventional financing. *Christian Action Ministry.*

The Safe Care document itself is entitled "Lease and Security Agreement." There is no provision for a conventional security deposit; this lends further credence to the proposition that this was in reality a financing arrangement.

There is undisputed testimony in the record, albeit hearsay but not objected to, that the reason for the conveyance and lease-back arrangement was to permit Safe Care to take over the property in the event of default without foreclosure proceedings. Cole had had a troubled financial history.

The lease had a primary term of 20 years with options to renew for two additional 10-year terms so that the possible maximum term would be 40 years. The annual rental was 13½% of the advancement of $5,500,000. The lease was described as "triple net," *i.e.,* Cole paid all real estate taxes, insurance and maintenance costs.

At the 11th and 16th anniversary dates Cole had the absolute option to purchase the property at 10 times the annual rental. In the event Safe Care received a *bona fide* offer of purchase, Cole had the right of first refusal. Further, in the event of sale to a third party, all of the terms of the lease remained in full force and effect, including the purchase options at the 11th and 16th years as well as the options to renew.

In our opinion these factors indicate sufficient incidents of ownership in Cole as to qualify for exemption. The County has pointed to certain other provisions in the lease which it claims circumscribe Cole's status sufficiently to deny exemption: (1) the requirement that Cole continue to use the property as a hospital and any change in that

status required the consent of Safe Care; (2) the requirement that Cole keep the premises in good repair and make no alterations without the consent of Safe Care; (3) the requirement that Cole not terminate a current agreement with a hospital management corporation without the consent of Safe Care.

In our opinion these requirements are aimed not at the question of ownership of the property, but at the question of the security of the property and use. As we have indicated several times already, the County does not dispute the question of use.

There are few, if any, *per se* rules in the field of property taxation. Obviously not every lease *qua* lease will qualify for exemption. (Compare *Jessamine Withers Home* and *Monticello Female Seminary.*) When, under proper circumstances, a sale-and-lease-back is used as a financing device, alternatively to conventional financing, it may qualify.

For all the foregoing reasons, the order of the circuit court of Champaign County is affirmed.

Affirmed.

TRAPP and MILLER, JJ., concur.