COLES-CUMBERLAND PROFESSIONAL DEVELOPMENT CORPORA-
TION *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF REVENUE,
Defendant-Appellant.

Fourth District   No. 4—95—0913

Argued July 10, 1996.—Opinion filed November 7, 1996.

COOK, P.J., dissenting.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solic-
itor General, and Karen J. Dimond (argued), Assistant Attorney General, of
counsel), for appellant.

Ralph D. Glenn (argued), of Glenn & Logue, of Mattoon, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

The Illinois Department of Revenue (Department) appeals from
an order of the circuit court of Coles County reversing on administra-
tive review a decision of the Department that a 1.465-acre parcel of
real estate leased to Lincolnland Home Care Foundation, Inc. (Lin-
colnland), a not-for-profit corporation, by Coles-Cumberland Profes-
sional Development Corporation (Coles-Cumberland), a for-profit
corporation, was not entitled to a real estate taxation charitable
exemption for the 1991 assessment year. The issues are whether (1)

real estate leased for profit by a for-profit corporation is not entitled to a charitable exemption and (2) improvements constructed on the subject real estate by a charitable organization are not exempt from real estate taxation. We reverse and reinstate the Department's decision.

It is undisputed that Lincolnland is a charitable organization. Lincolnland began construction on the premises in December 1990 and occupied the building on June 8, 1991. The building is part two-story, part one-story, encompasses about 8,994 square feet of internal space, and cost approximately $843,000 to construct. Most of the remainder of the parcel is used for parking. It is also undisputed that, during 1991, the property was in the actual process of development for exempt use or was actually used for charitable purposes, and that the parking lot was used exclusively for the charitable purpose of Lincolnland.

Although no evidence of the zoning ordinances of the City of Charleston, Illinois, was presented, it was represented to the Department by Lincolnland's attorney that the reason a 99-year lease was employed in this case, rather than the sale of a fee, was that the parcel was located within a planned unit development owned by Coles-Cumberland, transfer of a fee would subject the parcel to Charleston's subdivision ordinance, and said ordinance would not accommodate a professional building such as Lincolnland constructed. The lease required payment of $45,000 in rent, with an immediate payment of $30,000 and a one-time additional payment of $15,000. Coles-Cumberland had valued the property at $90,000 and considered the $45,000 balance a charitable donation, although the property had been valued for assessment purposes at the time between $55,000 and $60,000. Lincolnland was obligated to pay Coles-Cumberland a monthly maintenance fee of $375 for the upkeep of common areas. After two years, Coles-Cumberland could adjust the maintenance fee as required on a *pro rata* basis with other tenants occupying premises within the development. Lincolnland was also required to maintain the premises in good repair, purchase casualty and liability insurance, and pay all property taxes.

The lease granted Lincolnland the unrestricted right to build and own improvements on the land. Lincolnland was allowed to mortgage these improvements. Upon the termination or expiration of the lease, Lincolnland was permitted, but not required, to remove any improvements it had built. In the event the property was condemned by a public entity, Lincolnland and Coles-Cumberland were to be apportioned separate awards for their respective interests in the improvements and the land.

Lincolnland could not assign its leasehold without Coles-Cumberland's consent. Coles-Cumberland could sell, subject to the lease, the fee simple title at any time. Lincolnland had the right of first refusal to purchase the property, if Coles-Cumberland decided to sell. The agreed price would be $45,000, less rents paid, plus $1. Such a sale would occur when (1) Coles-Cumberland declared the property available for sale; (2) in the opinion of Coles-Cumberland's counsel, title could be conveyed without resulting in noncompliance with Charleston's zoning laws; or (3) Coles-Cumberland notified Lincolnland of an intent to sell its interest in the premises to another. Coles-Cumberland retained the right to encumber the fee simple interest, and an amendment to the lease provided that the provisions relating to mortgage of the fee and mortgage of the leasehold were not mutually exclusive.

In the event Lincolnland defaulted in its monthly maintenance payments, or in performing any of its other duties under the lease, or filed for bankruptcy, Coles-Cumberland could terminate the lease. If Lincolnland's improvements were damaged or destroyed, and Lincolnland elected not to repair them, then the lease would terminate.

The facts in this case are undisputed. However, we specifically note the absence of any testimony from a person related to Coles-Cumberland or concerning the nature of Coles-Cumberland's intentions as to this property.

"Where facts are undisputed, a determination of whether property is exempt from taxation is a question of law. (*Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331.) Thus, the decision as to whether property is exempt 'depends solely upon an application of the appropriate legal standard to the undisputed facts.' *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129.

'It is the well settled rule of law in the State of Illinois that all property is subject to taxation, unless exempt by statute, in conformity with the constitutional provisions relating thereto. Taxation is the rule—tax exemption is the exception.' (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 289-90.) 'Provisions granting tax exemptions are to be construed strictly and must come not only within the terms of the statute but also the authority given by the constitution.' (*Rogers Park Post*, 8 Ill. 2d at 290.) Courts have no power to create exemption from taxation by judicial construction, and the burden of establishing statutory authority within the limitations of the constitution, for such an exemption rests upon the person asserting it. *People ex rel. Cannon v. Southern Illinois Hospital Corp.* (1949), 404 Ill. 66, 68, citing *Oak Park Club v. Lindheimer* (1938), 369 Ill. 462, 465-66.

Each individual claim must be determined from the facts presented. (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 394.) In determining whether property is included within the scope of a tax exemption all facts are to be construed and all debatable questions resolved in favor of taxation. *Rogers Park Post*, 8 Ill. 2d at 290." *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 491-92, 590 N.E.2d 478, 481 (1992).

In *Springfield Marine Bank v. Property Tax Appeal Board*, 44 Ill. 2d 428, 429-30, 256 N.E.2d 334, 335-36 (1970), the Supreme Court of Illinois stated that, although a nonexempt lessee could be taxed where there was an exempt lessor, a nonexempt lessor may be taxed on the full value of the property even when the right to the use of the property was transferred under a 99-year lease to a charitable organization. Property "leased or otherwise used with a view to profit" is not exempt. Ill. Rev. Stat. 1989, ch. 120, par. 500.2. As a result, the appellate court has ruled that property leased from a nonexempt owner and used for religious purposes is not tax exempt. *Victory Christian Church v. Department of Revenue*, 264 Ill. App. 3d 919, 922-23, 637 N.E.2d 463, 465 (1994); *American National Bank & Trust Co. v. Department of Revenue*, 242 Ill. App. 3d 716, 724, 611 N.E.2d 32, 37-38 (1993). Both decisions stated that the question of whether the property is being used for profit depends on the intent of the owner.

■ The courts have long recognized that ownership is separate from title in Illinois tax law. *Immanuel Evangelical Lutheran Church v. Department of Revenue*, 267 Ill. App. 3d 678, 682, 642 N.E.2d 1344, 1347 (1994). The courts are concerned with the realities of ownership, the key elements of which are control and the right to enjoy the benefits of the property. *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 273, 664 N.E.2d 52, 57 (1996). However, in considering the question of ownership, it must be noted this case is distinguishable from a case involving a contract for purchase. See *Christian Action Ministry v. Department of Local Government Affairs*, 74 Ill. 2d 51, 62, 383 N.E.2d 958, 964 (1978). In this case, the intent of Coles-Cumberland and the determination of the extent of its ownership interest must be gleaned from the lease.

Coles-Cumberland has rented the property to Lincolnland for $45,000, plus payments including payment of real estate taxes. The payment of the real estate taxes are part of the rent, and it clearly benefits Coles-Cumberland not to have to pay these expenses. Although the lease contained a provision relating to the possibility of Coles-Cumberland selling the property to Lincolnland, Coles-Cumberland is not obligated to sell the property and could retain it indefinitely with Lincolnland paying the real estate taxes. The

leasehold cannot be assigned without approval from Coles-Cumberland, which also retained the right to mortgage the fee simple interest. The lease further contains a provision "authorizing" Lincolnland to allow for easements across the land for construction and development of the planned unit development, and easements had been granted. As a result, the development of the parcel enhances Coles-Cumberland's ownership of the surrounding parcels in the planned unit development. It certainly enhances the value of the fee estate in this particular parcel.

Distinguishable from the case at bar is this court's decision in *Cole Hospital, Inc. v. Champaign County Board of Review*, 113 Ill. App. 3d 96, 446 N.E.2d 562 (1983). *Cole Hospital* involved creative financing where the hospital, the owner of the subject real estate, could not obtain traditional financing. The hospital was forced to convey the property, subject to a lease-back arrangement, which provided that the hospital pay all the real estate taxes, maintenance, and insurance costs. It had the absolute option to repurchase the property at 10 times the annual rent at the eleventh and sixteenth anniversary dates, and it had a right of first refusal if the owner received a *bona fide* offer to purchase. *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 564-65. The right to choose when and if the property may be transferred is one of the most significant incidents of ownership. *Henderson County Retirement Center, Inc. v. Department of Revenue*, 237 Ill. App. 3d 522, 527, 604 N.E.2d 1003, 1006 (1992). In this case, Lincolnland has no power to force the sale of the property.

In *Wheaton College v. Department of Revenue*, 155 Ill. App. 3d 945, 949, 508 N.E.2d 1136, 1138 (1987), cited with approval by the Supreme Court of Illinois in *Chicago Patrolmen's Ass'n*, it was determined that a 30-year lease was undertaken primarily for the benefit of the nonexempt owner, and the denial of tax exemption was affirmed. The same result pertains here.

The remaining issue is whether the value of the improvements constructed by Lincolnland on the subject parcel should be exempt. In *Decatur Sports Foundation v. Department of Revenue*, 156 Ill. App. 3d 623, 509 N.E.3d 1103 (1987), this court held that the Department properly denied an exemption for improvements built by a charitable organization where the underlying land was owned by a for-profit organization. This court held that the improvement constituted part of the real property, and thus its value should be assessed against the landowner, which was a noncharitable corporation. In reaching this conclusion, this court relied upon section 1(13) of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1973, ch. 120, par. 482(13)), which defined

real property as including "all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind." *Decatur Sports Foundation*, 156 Ill. App. 3d at 628-29, 509 N.E.2d at 1106, citing *In re Tax Objections of Hutchens*, 34 Ill. App. 3d 1039, 1040, 341 N.E.2d 169, 170 (1976).

The decision in *Decatur Sports Foundation* was discussed by the Supreme Court of Illinois in *City of Chicago*. There, although considering an exemption under a different section of the Act than was addressed in *Decatur Sports Foundation*, the decision in *City of Chicago* stated the justices of the Supreme Court of Illinois were "not convinced" the appropriate analysis was undertaken in *Decatur Sports Foundation*. *City of Chicago*, 147 Ill. 2d at 498-99, 590 N.E.2d at 484-85. Thus, the determination of whether *Decatur Sports Foundation* utilized the proper analysis was left to an appropriate case. This is not such a case, even though this case involves the same exemption as discussed in *Decatur Sports Foundation*.

Although the Supreme Court of Illinois has recognized that a partial or separate exemption may be had where multiple entities share the use or ownership of a parcel (*Chicago Patrolmen's Ass'n*, 171 Ill. 2d at 279-80, 664 N.E.2d at 60), neither exists here. Moreover, in *Chicago Patrolmen's Ass'n*, the Supreme Court of Illinois expressly distinguished the facts of that case from cases involving leaseholds. *Chicago Patrolmen's Ass'n*, 171 Ill. 2d at 277, 664 N.E.2d at 59.

■ In this case, there is no division of use since Lincolnland is the only user of the premises, and there is no division of ownership since Coles-Cumberland is the owner of the real estate for tax purposes. That includes the improvements, even if the reasoning in *Decatur Sports Foundation* is not employed.

It is true that Lincolnland paid for the construction of the improvements. It is also true that the lease provided that Lincolnland could take the improvements with it at the end of the lease. But there was no testimony that the building and parking lot could be moved. And Lincolnland was "under no obligation to remove or change any buildings or other improvements" at the termination of the lease. There was no provision for Coles-Cumberland to pay Lincolnland anything for the improvements which are not removed on termination of the lease or in the event that Lincolnland defaults on the lease. If the improvements are damaged and Lincolnland fails to repair, restore, or replace them within the appropriate time, (1) insurance proceeds are paid one-half to Lincolnland and one-half to Coles-Cumberland, (2) Coles-Cumberland "shall raze and demolish" them, and (3) the lease will be automatically terminated.

In essence, Lincolnland has paid for improvements to the real

estate which, realistically, will be left to Coles-Cumberland, although Lincolnland currently has the right to use them. Under the evidence presented in this case, the construction and maintenance of a building on Coles-Cumberland property is part of the rent.

In *Victory Christian Church,* the court indicated that it would be inappropriate to allow "any private property not entitled to exemption to become tax exempt merely by leasing it to" an exempt organization. *Victory Christian Church,* 264 Ill. App. 3d at 923, 637 N.E.2d at 465. In this case, Lincolnland has not proved sufficient incidents of ownership in the land or the improvements to warrant a tax exemption of the entire premises or any divisible portion of it.

The judgment of the circuit court of Coles County is reversed, and the decision of the Department is reinstated.

Circuit court reversed; Department decision reinstated.

STEIGMANN, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent and would affirm the judgment of the trial court.

Section 19.7 of the Act (Ill. Rev. Stat. 1991, ch. 120, par. 500.7) has been interpreted as requiring three things before a property will qualify for a charitable tax exemption: (1) charitable use, (2) ownership by a charitable organization, and (3) apparent from the section's plain language, the property "cannot be 'leased or otherwise used with a view to profit.' " *Chicago Patrolmen's Ass'n,* 171 Ill. 2d at 270, 664 N.E.2d at 55-56, quoting Ill. Rev. Stat. 1987, ch. 120, par. 500.7. At issue here is the second requirement, charitable ownership. It is undisputed that Lincolnland is a charitable, nonprofit organization and that Lincolnland uses the property for charitable purposes. Lincolnland neither leases out the property nor uses it to generate profit.

As the majority correctly notes, ownership is distinct from title. Ownership, for purposes of the Act, defies any sort of bright-line analysis. Rather, ownership is determined by the "realities-of-ownership" test, the key elements of which are control and the right to enjoy the benefits of the property. *Chicago Patrolmen's Ass'n,* 171 Ill. 2d at 273, 664 N.E.2d at 57. Courts applying the realities-of-ownership test have found nontitleholders to be owners in *Christian Action Ministry, Cole Hospital,* and *Henderson County Retirement Center.* Both *Cole Hospital* and *Henderson County Retirement Center* involved long-term leases to charities, similar to the lease at issue here.

I would hold that this 99-year lease grants Lincolnland sufficient incidents of ownership that Lincolnland should be deemed the owner of the land. Lincolnland's right to control the property is substantial. Lincolnland can build, remove, mortgage, or otherwise encumber any improvements it wishes without the consent of Coles-Cumberland.

Moreover, the benefits of the lease arrangement inure primarily to Lincolnland, not to Coles-Cumberland. *Cf. Wheaton College,* 155 Ill. App. 3d at 949, 508 N.E.2d at 1138 (college-lessee was not entitled to a tax exemption where the benefits of the 30-year lease inured primarily to the lessor). Although Coles-Cumberland may indirectly benefit from having another medical service provider within its complex, the primary purpose of the lease arrangement is to allow Lincolnland to continue its charitable endeavors in proximity to Sarah Bush Lincoln Health Center without running afoul of zoning ordinances. After the one-time rent payment of $45,000, Coles-Cumberland receives no meaningful benefit from the property. Although Lincolnland is obligated to pay maintenance fees to Coles-Cumberland, the lease makes clear those fees are to be tied to actual expenses for the maintenance of common areas, to be shared on a *pro rata* basis with other tenants. Such fees are not inconsistent with ownership; owners in planned developments commonly pay maintenance fees. There is simply no evidence Coles-Cumberland derives or intends to derive income from the property through fees or any other mechanism.

The majority makes the assertion that Lincolnland's obligation to pay real estate taxes is "part of the rent" due Coles-Cumberland. 284 Ill. App. 3d at 354. That begs the question of whether real estate taxes are due. Had Coles-Cumberland simply transferred title to Lincolnland, Coles-Cumberland would have ceased to pay taxes and other upkeep expenses. In *Cole Hospital, Henderson County Retirement Center,* and *Christian Action Ministry,* the nontitleholder charities were obligated by lease or contract to pay any real estate taxes due, but they were nevertheless found to be owners.

The majority also characterizes the improvements on the property as part of the rent due Coles-Cumberland. 284 Ill. App. 3d at 357. There is no indication that Coles-Cumberland will ever get to use or enjoy these improvements. The useful life of these improvements may not extend beyond the 99-year lease term. Even if the improvements remain usable a century hence, Lincolnland is free to raze or remove them.

As the majority notes, one of the most significant incidents of ownership is the right to choose when and if the property may be transferred. 284 Ill. App. 3d at 355. In *Henderson County Retirement*

*Center,* a charitable organization was held not to own leased property for purposes of section 19.7 of the Act, but the organization later obtained an ownership interest when the lease was amended to grant the organization an unconditional option to purchase the property on the fifteenth and twentieth anniversaries of the lease for an amount equal to 125 times the average monthly rental. *Henderson County Retirement Center,* 237 Ill. App. 3d at 524, 604 N.E.2d at 1004. Similarly, in *Cole Hospital,* this court found that the hospital's unconditional option to buy the property on the eleventh and sixteenth anniversaries of the lease for 10 times the annual rent was a factor in support of finding that the hospital enjoyed the incidents of ownership. *Cole Hospital,* 113 Ill. App. 3d at 100, 446 N.E.2d at 565. Here, Lincolnland has no right to purchase title on a certain date, but the lease contemplates that Lincolnland can purchase title as soon as Coles-Cumberland's attorney believes such a purchase would be legally possible. There is no reason to believe that Coles-Cumberland could block a sale in bad faith. And unlike the charities in *Henderson County Retirement Center* and *Cole Hospital,* Lincolnland may purchase title for the nominal sum of $1. Lincolnland has essentially already paid the purchase price. Because Lincolnland controls the property, enjoys its benefits, and may obtain title for a nominal sum, I would find that Lincolnland is the owner.

I would further rule that Lincolnland is at least entitled to a charitable exemption for the value of the improvements it constructed upon the leased land. The majority relies upon *Decatur Sports Foundation* for the proposition that the improvements cannot be exempt where the underlying property is taxable. I question the continued vitality of *Decatur Sports Foundation.*

The supreme court criticized *Decatur Sports Foundation* in *City of Chicago* (147 Ill. 2d at 499, 590 N.E.2d at 485). In *City of Chicago,* the court held that the city was entitled to an exemption for buildings it owned, although the land which it leased from a private party was not tax-exempt. The court rejected the Department's argument that section 1(13) of the Act mandated taxing the land and the buildings as a single unit. Ill. Rev. Stat. 1987, ch. 120, par. 482(13).

The *City of Chicago* court declined, however, to expressly overrule *Decatur Sports Foundation* because the cases involved different sections of the Act. *City of Chicago,* 147 Ill. 2d at 498-99, 590 N.E.2d at 484-85. *City of Chicago* was decided under section 19.6 of the Act, which exempts municipal property. Ill. Rev. Stat. 1987, ch. 120, par. 500.6. Section 19.6 exempts "public buildings *** with the ground" (Ill. Rev. Stat. 1987, ch. 120, par. 500.6) while section 19.7, at issue in *Decatur Sports Foundation* and this case, speaks simply of "[a]ll prop-

erty of institutions of public charity" (Ill. Rev. Stat. 1987, ch. 120, par. 500.7).

Nevertheless, the supreme court relied upon *City of Chicago* when it later held that partial or separate exemptions were permissible under section 19.7 of the Act. *Chicago Patrolmen's Ass'n*, 171 Ill. 2d at 280, 664 N.E.2d at 60. In *Chicago Patrolmen's Ass'n*, a charitable organization and a for-profit organization each held an undivided 50% interest in a property. The court held that the property was entitled to a partial exemption of 50% under section 19.7. *Chicago Patrolmen's Ass'n*, 171 Ill. 2d at 281, 664 N.E.2d at 61.

Reading *City of Chicago* and *Chicago Patrolmen's Ass'n* in conjunction supports the conclusion that improvements may be divisible from the land for tax purposes. Exemptions under section 19.7 of the Act are not necessarily all or nothing. It is undisputed that Lincolnland's building and parking lot were exclusively owned and used for charitable purposes. Allowing Lincolnland an exemption for its improvements would further the policy of encouraging charitable work.