# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *OKO, LLC v. Illinois Department of Revenue*, 2011 IL App (4th) 100500

---

| | |
|---|---|
| Appellate Court Caption | OKO, LLC, Plaintiff-Appellant, v. THE ILLINOIS DEPARTMENT OF REVENUE, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4–10–0500 |
| Filed | June 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of a real estate tax exemption to the titleholder of the land at issue was affirmed, notwithstanding the fact that the titleholder had entered into a sale-and-leaseback agreement with the charitable organization that sold the property to the titleholder in order to improve the organization's financial condition, since the agreement did not require the charitable organization to pay the real estate taxes, the titleholder, which did not have tax-exempt status, sought the real estate tax exemption, and allowing a nonexempt landlord to claim a real estate tax exemption merely because an exempt tenant was conducting charitable activities on the leased premises would be an impermissible extension of the holding in *Cole Hospital* and a result not contemplated by section 15–65 of the Property Tax Code. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 09–MR–604; the Hon. Theodore E. Paine, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Christopher M. Ellis and Timothy J. Tighe, Jr. (argued), both of Bolen Robinson & Ellis, LLP, of Decatur, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Eric Truett (argued), Assistant Attorney General, of counsel), for appellee.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.
Presiding Justice Knecht concurred in the judgment and opinion.
Justice Cook dissented, with opinion.

## OPINION

¶ 1    In September 2009, plaintiff, OKO, LLC (OKO), filed a complaint for administrative review of the decision of defendant, the Illinois Department of Revenue (Department), denying OKO's application for a property-tax exemption for the tax year 2007 under section 15–65 of the Property Tax Code (Code) (35 ILCS 200/15–65 (West 2008)) because the property in question was not owned by a charitable organization. In May 2010, the circuit court affirmed the Department's decision.

¶ 2    OKO appeals, arguing the Department's denial was clearly erroneous where, under the terms of the sale-leaseback agreement, the previous owner, who is also the lessee, retained sufficient indicia of ownership to qualify for the exemption. We affirm.

¶ 3                              I. BACKGROUND

¶ 4                              A. Subject Property

¶ 5    This case arises from the sale of property located at 815 North Church Street in Decatur, Illinois (property), by Old Kings Orchard Community Center, Inc. (Center), to OKO. The Center is a tax-exempt, not-for-profit organization engaged in community-outreach activities such as after-school programs and meals for children. The parties stipulated the property was being used for charitable purposes. As a result, the issue of charitable use is not part of this appeal.

¶ 6    The Center was operating at a loss, and its mortgage was going to be foreclosed. Decatur businessman Thomas Kowa, president of the Huston-Patterson Corporation, created OKO as a limited-liability company (LLC) for the purpose of purchasing the property. Kowa testified he purchased the Center because he wanted to help the community. However, he explained the Center's chances of staying open were much greater if he paid off the note instead of just donating $100,000. According to Kowa, the Center had a history of encumbering its property with liens it could not pay.

¶ 7                                     B. Purchase Agreement

¶ 8          On March 16, 2007, OKO entered into a purchase and sales agreement with the Center for $100,000, which was used to pay off the existing mortgage on the property. The agreement provided at closing the parties would execute a lease, the terms of which provided OKO would lease the property to the Center.

¶ 9                              C. Parties' Lease and Modifications

¶ 10         On March 30, 2007, the parties entered into the original lease agreement. Thereafter, the parties entered into two subsequent addenda dated March 25, 2008, and September 29, 2008.

¶ 11                              1. *Original March 30, 2007, Lease*

¶ 12         The term of the original lease was for 15 years, with a March 30, 2007, effective date. According to the lease, the Center was to pay $1,000 rent per month. However, paragraph four of the lease stated, "So long as the Premises subject to this Lease retains its status as exempt from real estate taxes, which shall be based upon a final determination from the relevant governmental authority, then Lessor will waive its right to collect any rent ***."

¶ 13         Under the original lease the Center also agreed to pay all utility, maintenance, repair, and insurance costs on the property. However, the Center was not required to pay real-estate taxes. The Center also agreed not to assign or sublet the property without OKO's consent. The Center had the right to purchase the property at any time so long as it maintained its property-tax-exempt status. However, the Center would lose that right if the property lost its tax-exempt status. The original lease also gave the Center the right of first refusal in the event OKO received a *bona fide* offer on the property.

¶ 14                              2. *March 25, 2008, Addendum*

¶ 15         On March 25, 2008, the parties entered into an addendum to the original lease. The addendum had a March 1, 2008, effective date. The addendum modified paragraph four of the original lease to state OKO would waive its right to collect rent so long as the Center continued its not-for-profit activities as opposed to the original lease which stated the waiver applied if the property retained its tax-exempt status.

¶ 16                              3. *September 29, 2008, Addendum*

¶ 17         On September 29, 2008, the parties entered into another addendum to the original lease. This addendum had a March 30, 2007, effective date.

¶ 18         The addendum replaced paragraphs 4, 10, 11, and 13 of the original lease. Paragraph 4 retained the changes made in the prior addendum. Where paragraph 10 of the original lease provided the Center could purchase the property so long as the property maintained its tax-exempt status, the addendum conditioned the purchase ability on the Center continuing its

not-for-profit activities. Paragraph 11 of the original lease gave the Center the right of first refusal. Pursuant to the addendum, OKO agreed not to sell or transfer the property as long as the Center continued its not-for-profit activities. Under paragraph 13 of the original lease, the Center could not terminate the lease or surrender the property in the event of casualty. However, the addendum gave the Center the option to terminate the lease and surrender the property in the event of casualty.

¶ 19                                       D. OKO's Application

¶ 20        On November 20, 2007, OKO filed an application for a property-tax exemption with the Macon county board. On December 14, 2007, the board recommended the denial of OKO's application because the property was not owned by a charitable organization. On January 17, 2008, the Department denied OKO's exemption, finding the property was not in exempt ownership or exempt use. On March 4, 2008, OKO filed a request for a formal administrative hearing to challenge the Department's conclusions.

¶ 21                                      E. Administrative Hearing

¶ 22        In the June 2008 pretrial order, the administrative law judge (ALJ) identified the following issues:

    "(1) whether the lessee has the indicia of ownership for property tax purposes pursuant to the lease that was in effect during 2007; (2) if no, whether the modifications that were made in 2008 revert back to the year 2007; (3) if yes, whether the lessee has the indicia of ownership for property tax purposes pursuant to the modifications that were made during 2008. The issue of whether the property is for charitable purposes is not disputed by the Department."

¶ 23        In August 2009, the ALJ recommended the denial of OKO's application. The ALJ found the evidence did not support a finding the Center had sufficient indicia of ownership to remain the owner of the property for tax purposes.

¶ 24                                       F. Administrative Review

¶ 25        In November 2009, OKO filed a complaint for administrative review, arguing the ALJ and the Department erred. According to OKO, even though it held legal title to the property, the Center owned the property for property-tax purposes under the parties' lease-back arrangement.

¶ 26        On May 25, 2010, the circuit court affirmed the Department's decision.

¶ 27        This appeal followed.

¶ 28                                         II. ANALYSIS

¶ 29        On appeal, OKO argues the Department erred in denying it an exemption because the sale-leaseback arrangement between OKO and the Center did not divest the Center of ownership for property-tax purposes. Specifically, OKO contends the property is still owned

by the Center for property-tax purposes even though OKO holds title to it. However, while OKO argues the property is still owned by the Center for property-tax purposes, OKO, not the Center, applied for the exemption and is the party appealing before this court.

¶ 30                                   A. Standard of Review

¶ 31        We initially note the appellate court's role is to review the Department's administrative decision, not the circuit court's. *JB4 Air, LLC v. Department of Revenue*, 388 Ill. App. 3d 970, 972, 905 N.E.2d 310, 312 (2009). The appropriate standard of review concerning administrative decisions is contingent upon whether the question being reviewed is one of fact, law, or both. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 847, 869 N.E.2d 964, 972 (2007). "An administrative agency's decision on questions of fact are entitled to deference and are reversed only if against the manifest weight of the evidence." *Friends of Israel Defense Forces v. Department of Revenue*, 315 Ill. App. 3d 298, 302, 733 N.E.2d 789, 792-93 (2000). An administrative agency's decisions on questions of law are not afforded deference and thus are reviewed *de novo*. *Friends of Israel*, 315 Ill. App. 3d at 302, 733 N.E.2d at 793.

¶ 32        However, when a case "involves an examination of the legal effect of a given set of facts, it involves a mixed question of fact and law." *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). In such cases, we review the agency's decision under the clearly erroneous standard. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302; see also *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97, 862 N.E.2d 944, 950 (2007) ("clearly erroneous standard of review is proper when reviewing a decision of [an administrative agency] because the decision represents a mixed question of fact and law").

¶ 33        Under this standard, the agency's decision will not be deemed clearly erroneous unless the reviewing court is left with the definite and firm conviction a mistake has been committed. *Daley v. Lakeview Billiard Café, Inc.*, 373 Ill. App. 3d 377, 381-82, 869 N.E.2d 171, 175 (2007). Because this case involves a mixed question of fact and law, *i.e.*, whether the Department's decision complied with the rule of law as applied to the facts, the clearly erroneous standard of review applies.

¶ 34                                 B. Principles of Construction

¶ 35        Generally, all real property is subject to taxation unless exempt by statute and the constitution. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 388, 925 N.E.2d 1131, 1143-44 (2010); see also *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 491, 590 N.E.2d 478, 481 (1992) (tax exemption is the exception while taxation is the rule (citing *Rogers Park Post No. 108 v. Brenza*, 8 Ill. 2d 286, 290, 134 N.E.2d 292, 295 (1956))). Accordingly, statutes granting tax exemptions are strictly construed in favor of taxation. *Provena Covenant Medical Center*, 236 Ill. 2d at 388, 925 N.E.2d at 1144.

¶ 36        A party claiming an exemption must demonstrate it is entitled to the exemption by clear and convincing evidence. *Provena Covenant Medical Center*, 236 Ill. 2d at 388, 925

N.E.2d at 1144. That is, such a party must prove the property in question falls within the terms of both the constitutional authorization and the exempting statute. *Provena Covenant Medical Center*, 236 Ill. 2d at 388, 925 N.E.2d at 1144. All questions of fact and "debatable questions" are resolved in favor of taxation. *Provena Covenant Medical Center*, 236 Ill. 2d at 388, 925 N.E.2d at 1144 (citing *Follett's Illinois Book & Supply Store, Inc. v. Isaacs*, 27 Ill. 2d 600, 606, 190 N.E.2d 324, 327 (1963)). "[E]very presumption is against the intention of the state to exempt property from taxation [citation]." *Provena Convenant Medical Center*, 236 Ill. 2d at 388, 925 N.E.2d at 1144 (citing *Reeser v. Koons*, 34 Ill. 2d 29, 36, 213 N.E.2d 561, 565 (1966)).

¶ 37                               C. Charitable Exemption

¶ 38        Section 6 of article IX of the Illinois Constitution of 1970 provides the General Assembly the power to exempt from taxation property used for, *inter alia*, charitable purposes. See Ill. Const. 1970, art. IX, § 6. As part of this grant of authority, the General Assembly " 'may place restrictions, limitations, and conditions on [property-tax] exemptions.' " *Provena Covenant Medical Center*, 236 Ill. 2d at 390, 925 N.E.2d at 1145 (citing *North Shore Post No. 21 of the American Legion v. Korzen*, 38 Ill. 2d 231, 233, 230 N.E.2d 833, 835 (1967)). One such restriction is found in section 15–65 of the Code. Pursuant to section 15–65, to qualify for a charitable exemption, the property must be "actually and exclusively used for charitable or beneficent purposes, and not leased or otherwise used with a view to profit, but also that it be owned by an institution of public charity." (Internal quotation marks omitted.) *Provena Covenant Medical Center*, 236 Ill. 2d at 390, 925 N.E.2d at 1145 (citing *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 270, 664 N.E.2d 52, 56 (1996)); see also 35 ILCS 200/15–65 (West 2008).

¶ 39        In this case, the parties agree the Center is a charitable organization and that its activities constitute charitable use. The parties also agree OKO is *not* a charitable organization. However, OKO, not the Center, is seeking the tax exemption.

¶ 40        The Macon County board of review recommended denial of OKO's request for an exemption because the property is not owned by a charitable organization. The Department also denied the request because the property was not in exempt ownership. OKO's status as a noncharitable organization is not in dispute in this case–OKO concedes it is not a charitable entity. This concession ends the discussion and OKO's appeal. OKO argues its status as the true titleholder is irrelevant for exemption purposes because the Center, as the lessee, has sufficient indicia of ownership to qualify for the exemption. However, OKO cannot unilaterally step into the Center's shoes and try to claim an exemption to which the Center *might* be eligible.

¶ 41                                    D. Ownership

¶ 42        OKO relies on this court's decision in *Cole Hospital, Inc. v. Champaign County Board of Review*, 113 Ill. App. 3d 96, 100, 446 N.E.2d 562, 564 (1983), where we recognized a nontitleholder as the owner of property for tax purposes where that party was a lessee in a sale-and-leaseback agreement. In fact, OKO argues it tailored the lease to our

reasoning in *Cole Hospital* and *Coles-Cumberland Professional Development Corp. v. Department of Revenue*, 284 Ill. App. 3d 351, 672 N.E.2d 391 (1996), for the specific purpose of qualifying for a property-tax exemption. However, our decisions in *Cole Hospital* and *Coles-Cumberland* were not made under facts similar to those of the instant case.

¶ 43    In *Cole Hospital*, this court held a *lessee* in a sale-and-leaseback agreement possessed sufficient incidents of ownership in the subject property to entitle the lessee to a property-tax exemption. *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 565. There, the hospital conveyed legal title to a private organization, which in turn leased it back to the hospital for a term of 20 years. *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 565. The hospital entered the leaseback arrangement because it wanted to secure financing to build a new facility but had been unsuccessful in securing conventional bank financing. *Cole Hospital*, 113 Ill. App. 3d at 97-98, 446 N.E.2d at 563. Pursuant to their agreement, the hospital had the absolute option to purchase the property as well as right of first refusal. *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 565. However, the lease would remain in full effect in the event of a sale to a third party. *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 565.

¶ 44    The agreement also made the hospital responsible for paying all the insurance and maintenance costs as well as the real estate taxes. *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 565. This court found the agreement was undertaken as an alternative to conventional financing and the terms of the lease gave the hospital sufficient incidents of ownership in the property such that the hospital, a charitable institution, could qualify for a property-tax exemption. *Cole Hospital,* 113 Ill. App. 3d at 100-01, 446 N.E.2d at 565; see also *Christian Action Ministry v. Department of Local Government Affairs*, 74 Ill. 2d 51, 62-63, 383 N.E.2d 958, 963-64 (1978) (finding equitable ownership of property by a charitable organization for charitable purposes could qualify the organization for an exemption where the organization was purchasing the property contract for deed and did not have legal title; otherwise, a charitable institution unable to acquire customary financing would be penalized).

¶ 45    What distinguishes the case *sub judice* from *Cole Hospital, Christian Action Ministry*, and *Coles-Cumberland* is the *applicant* for the exemption. In *Cole Hospital*, the *hospital,* a charitable organization, filed for the exemption because under the lease terms it was responsible to pay the property taxes even though it no longer owned the property. Likewise, in *Christian Action Ministry*, the charitable organization applied for the exemption. In *Coles-Cumberland*, the charitable lessee was a coapplicant for the exemption and was responsible for payment of the property taxes. *Coles-Cumberland*, 284 Ill. App. 3d at 354-55, 672 N.E.2d at 394-95. The requisite factors were weighed and the court found the lessee did not possess sufficient incidents of ownership to qualify for the exemption. See *Coles-Cumberland*, 284 Ill. App. 3d at 354-55, 672 N.E.2d at 394-95 (finding ownership remained with the nonexempt lessor where, *inter alia*, the lessee paid rent on the property and could not assign the lease or force the sale of the property without the lessor's approval and the development of the property enhanced the lessor's ownership value).

¶ 46    While we agree with the dissent that a charitable lessee *could* qualify for an exemption as the equitable owner if the requisite incidents of ownership are satisfied, that

is not the case here. In this case, OKO, a *noncharitable* organization responsible for payment of the real estate taxes, applied for the exemption because it believed the Center was eligible pursuant to *Cole Hospital* and *Coles-Cumberland*. As stated, to qualify for a charitable exemption, section 15–65 requires *both* exempt ownership and use. See *Provena Covenant Medical Center*, 236 Ill. 2d at 390, 925 N.E.2d at 1145. We note neither party has been able to point to a case–nor has our research revealed one–where a nonexempt *owner*, rather than the charitable organization, was granted the tax exemption.

¶ 47 OKO argues even if the Center does not possess sufficient indicia of ownership to obtain the exemption under the original lease, the property should be exempt under the terms of the subsequent addenda because they relate back to the date of the original lease. We are unpersuaded. Under *any* version of the lease agreement, the Center is not responsible to pay the property taxes.

¶ 48 The terms of the lease between OKO and the Center required the Center to pay $1,000 rent per month. OKO waived payment of the rent (1) so long as the Center retained its tax-exempt status under the original lease and (2) so long as the Center continued its not-for-profit activities under the modified version of the lease. We recognize OKO's charitable intentions under the circumstances. However, a nonexempt landlord may not claim an exemption simply because an exempt tenant conducts charitable activities on the leased premises. See *Victory Christian Church v. Department of Revenue*, 264 Ill. App. 3d 919, 923, 637 N.E.2d 463, 465 (1994). We find granting an exemption to the *nonexempt* owner under the facts of this case to be an impermissible extension of our decision in *Cole* and one not contemplated by section 15–65. In light of the presumption in favor of taxation, the Department's denial of the exemption was not clearly erroneous.

¶ 49                                    III. CONCLUSION

¶ 50 For the reasons stated, we affirm the circuit court's judgment affirming the Department's decision to deny the exemption.

¶ 51 Affirmed.


¶ 52 JUSTICE COOK, dissenting:

¶ 53 There is a strong presumption in favor of taxation, "preservation of the property tax base." *Cole Hospital*, 113 Ill. App. 3d at 97, 446 N.E.2d at 563. All property is subject to taxation, unless exempt by statute, in conformity with the constitutional provisions relating thereto. Statutes granting tax exemptions must be strictly construed in favor of taxation. *Provena Covenant Medical Center*, 236 Ill. 2d at 388, 925 N.E.2d at 1143-44.

¶ 54 That is not to say that every claim for exemption must be denied. There is a public policy favoring the "encouragement of charitable works through tax exemption," where a property is exclusively used for charitable purposes and is owned by a charitable organization. *Cole Hospital*, 113 Ill. App. 3d at 97, 446 N.E.2d at 563; *Christian Action Ministry*, 74 Ill. 2d at 62, 383 N.E.2d at 963-64. A pair of Illinois Supreme Court cases from the late 1970's made clear that the concept of "ownership" is broader than mere situs of legal

title. Revenue collection is not concerned with refinements of title but with the realities of ownership, and although title is to be considered as one factor, it is not decisive. Control and the right to benefits of property are of far greater importance. "The key elements of ownership are control and the right to enjoy the benefits of the property." *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 489, 389 N.E.2d 540, 544 (1979) (land trust); *Christian Action Ministry*, 74 Ill. 2d at 61, 383 N.E.2d at 963 (contract for deed). There are few, if any, *per se* rules in the field of property taxation. Obviously not every lease *qua* lease will qualify for the exemption. But when, under proper circumstances, a sale-and-leaseback is used as a financing device, alternatively to conventional financing, it may qualify. *Cole Hospital*, 113 Ill. App. 3d at 101, 446 N.E.2d at 565.

¶ 55    In *Cole Hospital*, the testimony was "undisputed" that the reason for the conveyance and lease-back arrangement was to permit the lessor, Safe Care, Inc., to take over the property in the event of a default, without foreclosure proceedings. "Cole had *** a troubled financial history." *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 565. As to Safe Care, "[t]he exact nature of this organization is nowhere found in the record." *Cole Hospital*, 113 Ill. App. 3d at 98, 446 N.E.2d at 563. The ALJ complains here that OKO "did not clearly establish through documentary evidence" that the Center had a troubled financial history, that the sale-and-leaseback was its only financing option, or why the Regions Bank loan was called in. "No documentary evidence was provided to substantiate the fact that the loan was called in." However, as in *Cole Hospital*, the evidence in this case is "undisputed." The evidence was not contradicted by any witness or exhibit. Litigants should not be penalized for failing to call 10 witnesses when 1 is sufficient.

¶ 56    The majority states:

> "OKO's status as a noncharitable organization is not in dispute in this case–OKO concedes it is not a charitable entity. This concession ends the discussion and OKO's appeal. OKO argues its status as the true titleholder is irrelevant for exemption purposes because the Center, as the lessee, has sufficient indicia of ownership to qualify for the exemption. However, OKO cannot unilaterally step into the Center's shoes and try to claim an exemption to which the Center *might* be eligible." (Emphasis in original.) Supra ¶ 40.

¶ 57    That argument was not addressed by the parties, for obvious reasons. The County sent the tax bill to OKO. OKO was entitled to argue that it was not the "owner" for purposes of taxation. Proof that the Center was the "owner" is proof that OKO was not the owner. We are dealing with two sides of the same coin here. Was the property "owned" by OKO, in which event it was taxable? Or was it "owned" by the Center, admittedly a charitable institution? Again, the concept of "ownership" is broader than the mere situs of legal title. The fact that OKO was the titleholder does not resolve this case.

¶ 58    The majority's argument may be that in the lease OKO covenanted to pay all real-estate taxes, if any. That covenant was intended to answer the criticism in *Coles-Cumberland* that the lessor improperly had the right to enjoy the benefits of the property. "The payment of the real estate taxes are part of the rent, and it clearly benefits [the lessor] not to have to pay these expenses." *Coles-Cumberland*, 284 Ill. App. 3d at 354, 672 N.E.2d at 394. An

agreement between parties as to who will make tax payments does not affect the right of the State to impose taxes. The State can collect taxes on my real estate from me, no matter what agreements I have made with other individuals to reimburse me. The question is, who is the true "owner"? Who has the realities of ownership: control and the right to enjoy the benefits of the property.

¶ 59    As the Department points out in its brief, property ownership, for purposes of tax collection, is not determined solely by record title. "Ownership" for purposes of section 15–65 is ordinarily determined by the "realities of ownership" test. A court applying this test assesses whether the charitable institution has the requisite "incidents of ownership," such as the right to alienate, change or improve, possess, use and enjoy the property, to be considered the owner of property for the purpose of an exemption. The Center here has the right to alienate the property. Under paragraph 10 of the original lease, as in *Cole Hospital*, the Center has the exclusive right to purchase the premises at any time for the then current fair market value. The Center also has the right to change or improve, possess, use, and enjoy the property. The Department complains that the Center's right to purchase the property was conditioned on its tax status or tax-exempt activities. So what? The whole purpose of this transaction was to ensure that the property continued to be used for charitable purposes. The restriction of which the Department complains is no restriction at all. The lease in *Cole Hospital* also contained a requirement that Cole continue to use the property as a hospital and that any change in that status required the consent of Safe Care. *Cole Hospital*, 113 Ill. App. 3d at 100-01, 446 N.E.2d at 565. A charitable exemption was denied in *Coles-Cumberland*, because under the 99-year lease in that case the lessee had no right to purchase the property. Any improvements in the property accordingly went to the benefit of the lessor. *Coles-Cumberland*, 284 Ill. App. 3d at 354-55, 672 N.E.2d at 394-95. That is not the case here. The Center has the right to purchase the property at any time, and all benefits in this case go to the Center.

¶ 60    The Department also argues that the provisions of the lease are not consistent with the use of a sale-and-leaseback agreement as a financing device because the Center did not pay rent, insurance, maintenance, or taxes under the lease. First of all, I disagree with the argument that the Center was not required to pay any taxes under the lease. Under paragraphs 3 and 4 of the lease, the Center was required to pay rent of $1,000/month, but only if taxes were required to be paid. The requirement that the Center pay "rent" was effectively a requirement that the Center pay taxes. The ALJ found that under the original lease the lessee *was responsible* for "all utilities, maintenance and repairs and for maintaining insurance." The Center has not paid those bills, however; they have been paid by a donation from Huston-Patterson Corporation. I do agree that any provisions that the Center not pay rent, insurance, or maintenance would be unusual in a commercial loan, but again, "so what"? Why is the lessor, OKO, not allowed to make a donation to the Center? True, OKO does not look much like a bank or other traditional lender, but neither did Safe Care, Inc., the lessor in *Cole Hospital*. The ALJ's comment that Kowa's good intentions have divested the Center of ownership, because this does not look much like a financing method, is mistaken. It is not necessary that the lease agreement mimic a conventional loan. Rather, it is necessary that the charity, not the lessor, have the right to enjoy the benefits of the property. The lessor's lack

-10-

of benefits here actually reinforces the argument that real ownership rests in the lessee, the Center, and not the lessor.

¶ 61    The Department has taken inconsistent positions in this case. It began by arguing there was no charitable use. It now concedes there was a charitable use. The Department argued "there is no established safe harbor for a certain class of sale-and-leaseback agreements" by copying *Cole Hospital*, that the inquiry whether an agreement is an alternate financing device is done on a case-by-case, agreement-by-agreement basis. It later complained the agreement here did not "mimic" a conventional loan, "that the agreement in this case only resembles in passing the agreement in *Cole Hospital*." During negotiations in this case, the Department complained that certain words and phrases in the lease did not adequately express the parties' intent. When those words and phrases were changed as the Department suggested, the Department found other problems.

¶ 62    The Department argues that the status of an agreement as an alternate financing device depends on the intent of the parties and the manifestation of that intent in the provisions of the agreement. The intent of the parties in this case is undisputed. Joyce Keller testified the Center was having financial difficulties, that Regions Bank had called in its loan and mortgage, that the Center was facing foreclosure, and that she had unsuccessfully met with other banks and gone several places to try to get funding. Thomas W. Kowa testified he used the sale-and-leaseback procedure because he wanted to prevent the Center from once again encumbering the property. As in *Cole Hospital*, he wanted to permit OKO to take over the property in the event of a default without foreclosure proceedings. *Cole Hospital*, 113 Ill. App. 3d at 100, 446 N.E.2d at 565. The parties' intent was clearly set out in paragraph 4 of the contract:

> "It is further acknowledged and agreed that it is the intention and purpose of both parties that Lessee continue its current exempt operations uninterrupted and unabated despite the technical change of ownership of the Premises, and that Lessee will take whatever action is necessary and reasonable to assist Lessor in its efforts to have the Premises leased to Lessee declared tax exempt."

¶ 63    The Center continues the same charitable activities it has pursued for many years, which have been exempt from taxation. The Department concedes that the property is used for charitable purposes. The Center controls the use of the property and has the right to all benefits of the property. OKO receives no benefit from its "ownership" of the property. The denial of a charitable exemption in this case is clearly erroneous.